# EX PARTE CHARLEY WEBB, PETITIONER.

ON APPLICATION FOR HABEAS CORPUS AND CERTIORARI.

No. 11.   Original.   Argued May 13, 1912.—Decided June .10, 1912.

The Oklahoma Enabling Act of June 16, 1906, 34 Stat. 267, c. 3335, followed by the adoption of the constitution therein described, and the admission of the new State, had the effect of remitting to the state government the enforcement of the laws relating to the manufacture and sale of liquor within the State; and, so far as it covered the same field as the prior law of 1895 prohibiting introduction and sale of liquor in Indian country, the latter was by implication repealed.

While the Oklahoma Enabling Act may have by implication repealed the act of 1895 in part, it was not the intention of Congress to repeal that act in respect to the introduction of liquor from other States or Territories.

Congress has for many years consistently pursued the policy of forbidding sales of liquor to Indians and of excluding liquor from territory occupied by them, and the Oklahoma Enabling Act was framed with a clear intent that while the State should control the liquor traffic within its own borders the United States should exercise its appropriate powers to prevent such traffic within the Indian Territory originating beyond the borders of the State.

It is unreasonable to suppose that Congress would wipe out all its laws and regulations regarding the liquor traffic with Indians including those established by treaties, and impose upon future Congresses the labor and difficulty of establishing new legislation upon that subject.

The proviso to § 1 of the Oklahoma Enabling Act expressly reserving to the Government of the United States the power to make laws and regulations in the future respecting Indians, negatives any purpose to repeal by implication the existing laws and regulations on the subject.

An act of Congress may repeal a prior treaty as well as it may repeal a prior statute; but it is a settled rule of statutory construction that repeals by implication are not favored, and will not be held to exist if there be any other reasonable construction.

Under § 8 of Article I, of the Federal Constitution, conferring upon Congress the right to regulate commerce with the Indian tribes, Congress may regulate traffic with Indians although within the limits of a single State.

Under § 8 of Article I of the Federal Constitution, Congress has the

same power to maintain an existing law in regard to Indian traffic so as to keep it in force in a new State as it has to enact new laws in the future on the same subject.

Although the Five Civilized Tribes have long been treated more liberally than other Indians, they remain none the less the wards of the Nation and in all respects subject to its control.

Reviewing the treaties and agreements with the several tribes occupying the Indian Territory within that State, it appears that the provisions of the Oklahoma Enabling Act in regard to liquor traffic with Indians originating beyond the State were enacted with the purpose of fulfilling the spirit and letter of those treaties and agreements.

The argument that the act of 1895 must have been repealed by the Oklahoma Enabling Act to the extent that the latter permitted the introduction of liquor into the State for the needs of the state agencies for distribution of liquor, is an argument *ab inconvenienti* and is without force so far as the introduction of liquor by an individual is concerned.

A law creating a crime ought to be explicit, and if ambiguous or uncertain it should be interpreted in favor of the liberty of the citizen; but in this case as there is no ambiguity in the act of 1895 a repeal *pro tanto* does not leave anything doubtful or ambiguous in that part of the act which remains in force.

The rule that the admission of a new State into the Union on an equal footing with the original States imports an equality of power over internal affairs, does not prevent the United States from reserving the right to regulate matters therein within the sphere of the plain power of Congress.

Where Congress embraces in an enabling act for the admission of a new State, legislation intended as a regulation of matters within the sphere of its powers, the legislation derives no force from any agreement or compact with the new State as an acceptance of statehood, but derives its force solely from the power of Congress to regulate the subject-matter of the legislation. *Coyle* v. *Smith*, 221 U. S. 574.

The Oklahoma Enabling Act did not repeal the act of 1895, so far as it pertains to the carrying of liquor from without the new State into that part of it which was Indian Territory (except that brought in by the State for use of state agencies) and the United States District Court for the District of Oklahoma has jurisdiction to punish an offender against the act of 1895 in that respect.

*Statement of the Case.*

THIS is an original application for a writ of *habeas corpus*

to inquire into the arrest and detention of the petitioner, who is held in custody by the United States Marshal for the Eastern District of Oklahoma, under a capias or bench warrant issued out of the United States District Court, upon an indictment of which the following is a copy:

"UNITED STATES OF AMERICA,
    *Eastern District of Oklahoma, ss:*

"In the District Court of the United States in and for the Eastern District aforesaid, at the March Term thereof, A. D. 1912, at Vinita, Oklahoma.

"The grand jurors of the United States, impaneled, sworn, and charged at the term aforesaid of the court aforesaid, on their oath present, that Otis Tittle and Charley Webb, and each of them, on the 23rd day of January, in the year 1912, in the said division of said district and within the jurisdiction of said court in Craig County in the State of Oklahoma, the same then and there being and constituting a portion of the Indian country of the said United States, did at the time and place aforesaid unlawfully, knowingly, wilfully and feloniously introduce, and attempt to so introduce and carry into the said Indian country, from without the said Indian country, seventeen gallons of spirituous, ardent and intoxicating liquor, to wit: alcohol, which said alcohol was by the said Otis Tittle and Charley Webb and each of them so introduced and carried into that portion of said Eastern District of Oklahoma so being then and there Indian country as above set forth and described, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

Petitioner also applies for a writ of certiorari to review the action of the District Court in refusing, on *habeas corpus*, to discharge him from custody under the bench warrant.

For present purposes it is admitted that petitioner is a

white man, not of Indian blood; that the intoxicating
liquors described in the indictment were shipped on his
order from the city of Joplin, in the State of Missouri,
by way of a railway that is a common carrier of interstate
shipments, consigned to petitioner at the city of Vinita,
in the State of Oklahoma; that the same reached the
latter city over said railway line in the course of ordinary
transportation at the time of the alleged offense set forth
in the indictment, to wit, January 23, 1912; that said
intoxicating liquors were delivered by the transportation
company to the petitioner within the city of Vinita, and
he received them upon a public street and highway and
not upon restricted land, for the purpose and with the
intent of carrying and transporting the liquors along the
streets and highways to another point within the same
city, and that while he was in the act of so receiving the
same he was arrested. That the city of Vinita is situate
in Craig County, Oklahoma, which county constitutes
a part of what was formerly the Cherokee Nation; that
all the lands of the Cherokee Nation have been either al-
lotted to individual citizens of the Cherokee Tribe under
the terms of the Cherokee Agreement and the several acts
of Congress providing for the allotment of said lands, or
sold by the United States for the benefit of the citizens
of the Cherokee Nation, either as town sites or otherwise,
under the authority of the several acts of Congress pro-
viding therefor; that the city of Vinita, including the
place where the intoxicating liquor was delivered to and
received by the petitioner, is a part of the original town
site of Vinita, Indian Territory; and that the status of
the lands and of the enrolled members of the Cherokee
Tribe of Indians are such as are fixed by law.

The petitioner contends that the District Court is
without jurisdiction, because there is no existing law under
which the offense alleged against him is punishable in
the Federal courts. He claims that he is obliged to resort

to this court for relief because the United States Circuit
Court of Appeals for the Eighth Circuit has decided the
questions involved, adversely to his contention, in the
case of *United States Express Co.* v. *Friedman*, 191 Fed.
Rep. 673.

*Mr. Joseph C. Stone* and *Mr. Lawrence Maxwell*, with
whom *Mr. James S. Davenport*, *Mr. Thomas H. Owen*
and *Mr. Joseph S. Graydon* were on the brief, for petitioner:

The police provisions of the act of January 30, 1897,
do not apply to Oklahoma since its admission into the
Union. Their continued existence is inconsistent with
the Oklahoma Enabling Act and the state constitution and
laws expressly authorized thereby. *Cherokee Tobacco*, 11
Wall. 616; *Matter of Heff*, 197 U. S. 488, 505.

There is, therefore, a statute of the United States
punishing the specific offense of selling liquor to an Indian,
fixing a certain penalty to be enforced in the courts of
the United States, followed by an enabling act creating
a new sovereign state, prohibiting the sale of liquors to
anybody, fixing a lesser penalty for the offense of selling,
and placing the jurisdiction in the state courts. The two
acts reveal an essential inconsistency which makes it
impossible for both to remain in force, unless there can be
a divided sovereignty. Every sale which would consti-
tute a violation of the act of 1897 in this territory would
also constitute a violation of the Enabling Act, punish-
able by the express provision of that act in the state
courts.

If the contention of the Government is correct, the
law is so framed that neither court nor layman can ascer-
tain by reading it by whom and under what circumstances
introduction of liquor is innocent or criminal. Laws which
create crimes ought to be so explicit that all men subject
to their penalties may know what act it is their duty to
avoid. *United States* v. *Sharp*, Pet. C. C. 118; *United*

*States* v. *Brewer*, 139 U. S. 278, 288; *The Enterprise*, 8 Fed. Cases, No. 4449; Bishop on Statutory Crimes, § 41; *Chicago & N. W. Ry. Co.* v. *Dey*, 35 Fed. Rep. 866; Sutherland on Stat. Const., 1st ed., 438; Lord Aukland's Principles of Penal Law, 312.

The question whether the act of January 30, 1897, remained in force in that part of Oklahoma which was formerly Indian Territory after the admission of the States is one of statutory construction, the presumption being that it did not, because its continued existence implies inequality of statehood. *United States* v. *McBratney*, 104 U. S. 621; *Draper* v. *United States*, 164 U. S. 240; *Matter of Heff*, 197 U. S. 488; *United States* v. *Celestine*, 215 U. S. 278; *United States* v. *Sutton*, 215 U. S. 291.

The place where the alleged offense was committed was not "Indian country" within the meaning of the act of January 30, 1897. *Ex parte Crow Dog*, 109 U. S. 556; *United States* v. *LeBris*, 121 U. S. 278; *United States* v. *Four Bottles Sour Mash Whiskey*, 90 Fed. Rep. 720; *United States* v. *Knowlton*, 3 Dakota, 58, 13 N. W. Rep. 573; *Forty-three Cases Cognac Brandy &c.*, 14 Fed. Rep. 539; *United States* v. *Martin*, 14 Fed. Rep. 817.

Petitioner is entitled to habeas corpus, and the writ should issue. *Matter of Heff*, 197 U. S. 488; *Ex parte Nielson*, 131 U. S. 176; *In re Mayfield*, 141 U. S. 107; *In re John Bonner*, 151 U. S. 242; *Ex parte Albert Siebold*, 100 U. S. 371; *In the Matter of Schneider*, 148 U. S. 162; May's U. S. Sup. Ct. Practice, 440.

*Mr. Assistant Attorney General Denison*, with whom *Mr. Louis G. Bissell* was on the brief, for the United States:

The Circuit Court of Appeals for the Eighth Circuit has ruled the point in controversy adversely to the petitioner (*United States Express Co.* v. *Friedman*, 191 Fed. Rep. 673, reversing 80 Fed. Rep. 1006).

The extinguishment of the Indian title to the particular lot in question did not remove it from the sphere of the Federal liquor laws, because the very treaties and statutes which authorized the extinguishment reserved the operation of those laws, 32 Stat. 716; 30 Stat. 495, 509; 32 Stat. 641, 656; 30 Stat. 567–8; 31 Stat. 861, 872; 32 Stat. 500, 504; and the case thus falls within the exception stated in *Bates* v. *Clark*, 95 U. S. 204, 208, 209, and *Dick* v. *United States*, 208 U. S. 358; and within the principle of *United States* v. *43 Gallons of Whiskey*, 93 U. S. 188, 193, 195, 197; *Ex parte Crow Dog*, 109 U. S. 556, 561; *United States* v. *Thomas*, 151 U. S. 577.

Notwithstanding the progress of piecemeal extinguishment of Indian land titles, Congress, in 1895, prohibited the manufacture and sale of liquors within all parts of the Indian Territory, and the introduction of liquors into said Territory (28 Stat. 697). And in 1907, Congress expressly continued the tribal existence of the Five Civilized Tribes (34 Stat. 822).

The case also differs from *Bates* v. *Clark*, *supra* (reported below in 46 N. W. Rep. 510), in that it does not involve the blanket extinguishment of Indian title, accompanied by a withdrawal of the Indians and opening up of the lands to white settlement. *United States* v. *Payne*, 8 Fed. Rep. 888, 895; 22 Ops. A. G. 232. See also *Buster* v. *Wright*, 135 Fed. Rep. 947.

The mere creation of the State of Oklahoma did not in and of itself oust existing Federal laws in regard to the liquor traffic with Indians. *United States* v. *43 Gallons of Whiskey*, 93 U. S. 188; *Dick* v. *United States*, 208 U. S. 340; *United States* v. *Holliday*, 70 U. S. 407; *Hallowell* v. *United States*, 221 U. S. 317; *Ex parte Crow Dog*, 109 U. S. 556, 561; *United States* v. *Thomas*, 151 U. S. 577.

The imposition upon the State by the Enabling Act of the purely intrastate duties to protect the Indians against the liquor traffic for the twenty-one years during

which such special protection was considered by Congress necessary, was within the power of the Federal Government as a part of its constitutional power over the intercourse with the Indians. *Coyle* v. *Oklahoma,* 221 U. S. 559. The imposition of these obligations upon the State was not repugnant to or in substitution for the existing law against interstate introduction of liquors into the Indian Territory, as the State would not have had the power to regulate interstate commerce (*Leisy* v. *Hardin,* 135 U. S. 100; *Rhodes* v. *Iowa,* 170 U. S. 412; *Louisville & Nashville R. R. Co.* v. *Cook Brewing Co.,* 223 U. S. 70), and as the continuance of that prohibition was essential for the protection of the Indians, there is no ground for implying an intention on the part of Congress to repeal the existing prohibition against the introduction of liquor from other States. *Frost* v. *Wenie,* 157 U. S. 46; *United States* v. *Celestine,* 215 U. S. 278.

The Enabling Act expressly reserved the authority of the government of the United States to make laws or regulations respecting such Indians, just as if the Enabling Act had never been passed (*Tiger* v. *Western Co.,* 221 U. S. 309), and also it expressly continued the laws in force at the time of the admission of the State into the Union, except as modified or changed, and also all laws of the United States not locally inapplicable.

If the Federal laws no longer prevent the introduction of liquor into the Indian Territory from States other than Oklahoma, then the equality of Oklahoma with its sister States has been impaired, for its inhabitants alone, among all the States, are prevented from conducting that traffic with the old Indian Territory.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

The draftsman of the indictment evidently intended to charge the offense known as "introducing liquor into

the Indian country," made punishable by § 2139, Rev. Stat., as amended by act of July 23, 1892, 27 Stat. 260, c. 234, and by the "Act to prohibit the sale of intoxicating drinks to Indians," etc., approved January 30, 1897, 29 Stat. 506, c. 109.

The Circuit Court of Appeals in *United States Express Company* v. *Friedman*, 191 Fed. Rep. 673, dealt with the question whether that portion of Oklahoma formerly known as the Indian Territory ceased to be "Indian country" upon the admission of Oklahoma as a State, so that these acts were no longer applicable, and with the question whether the admission of Oklahoma as a State had the effect of repealing them so far as pertained to the introduction of liquors into the Territory. Petitioner's application to this court for a *habeas corpus* was intended to bring that decision under review, and the agreed statement of facts was designedly so framed as to show the grounds of his contention that the *locus in quo* is no longer "Indian country."

The Government, however, in resisting the application, relied for support of the jurisdiction of the District Court not only upon the acts just referred to, but also upon § 8 of "An Act to provide for the appointment of additional judges of the United States court in the Indian Territory, and for other purposes," approved March 1, 1895, 28 Stat. 693, c. 145.

The three enactments in question are set forth in chronological order in the margin.[1]

---

[1] ACT OF JULY 23, 1892 (27 Stat. 260).

"Chap. 234.—An act to amend sections twenty-one hundred and thirty-nine, twenty-one hundred and forty, and twenty-one hundred and forty-one of the Revised Statutes touching the sale of intoxicants in the Indian country, and for other purposes.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section twenty-one hun-

At the time of the passage of the act of 1895 the Terri-
tory known as the Indian Territory was that which was

dred and thirty-nine of the Revised Statutes be amended and re-enacted
so as to read as follows:

"'SEC. 2139. No ardent spirits, ale, beer, wine, or intoxicating liquor
or liquors of whatever kind shall be introduced, under any pretense,
into the Indian country. Every person who sells, exchanges, gives,
barters, or disposes of any ardent spirits, ale, beer, wine, or intoxicating
liquors of any kind to any Indian under charge of any Indian superin-
tendent or agent, or introduces or attempts to introduce any ardent
spirits, ale, wine, beer, or intoxicating liquor of any kind into the Indian
country shall be punished by imprisonment for not more than two
years, and by fine of not more than three hundred dollars for each of-
fense. But it shall be a sufficient defense to any charge of introducing
or attempting to introduce ardent spirits, ale, beer, wine, or intoxicat-
ing liquors into the Indian country that the acts charged were done
under authority in writing from the War Department, or any officer
duly authorized thereunto by the War Department. All complaints
for the arrest of any person or persons made for violation of any of the
provisions of this act shall be made in the county where the offense
shall have been committed, or if committed upon or within any reser-
vation not included in any county, then in any county adjoining such
reservation, and, if in the Indian Territory, before the United States
court commissioner, or commissioner of the circuit court of the United
States residing nearest the place where the offense was committed,
who is not for any reason disqualified; but in all cases such arrests shall
be made before any United States court commissioner residing in such
adjoining county, or before any magistrate or judicial officer author-
ized by the laws of the State in which such reservation is located to
issue warrants for the arrest and examination of offenders by section
ten hundred and fourteen of the Revised Statutes of the United States.
And all persons so arrested shall, unless discharged upon examination,
be held to answer and stand trial before the court of the United States
having jurisdiction of the offense.'"

ACT OF MARCH 1, 1895 (28 Stat. 693).

"Chap. 145.—An Act to provide for the appointment of additional
judges of the United States court in the Indian Territory, and for other
purposes.

\*       \*       \*       \*       \*       \*       \*       \*

"SEC. 8. That any person, whether an Indian or otherwise, who
shall, in said Territory, manufacture, sell, give away, or in any manner,

described by metes and bounds in the act of May 2, 1890, 26 Stat. 81, 93, c. 182, § 29. It included the lands of

or by any means furnish to anyone, either for himself or another, any vinous, malt, or fermented liquors, or any other intoxicating drinks of any kind whatsoever, whether medicated or not, or who shall carry, or in any manner have carried, into said Territory any such liquors or drinks, or who shall be interested in such manufacture, sale, giving away, furnishing to anyone, or carrying into said Territory any of such liquors or drinks, shall, upon conviction thereof, be punished by fine not exceeding five hundred dollars and by imprisonment for not less than one month nor more than five years."

### ACT OF JANUARY 30, 1897 (29 Stat. 506).

"Chap. 109.—An Act to prohibit the sale of intoxicating drinks to Indians, providing penalties therefor, and for other purposes.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any person who shall sell, give away, dispose of, exchange, or barter any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or other intoxicating liquor of any kind whatsoever, or any essence, extract, bitters, preparation, compound, composition, or any article whatsoever, under any name, label, or brand, which produces intoxication, to any Indian to whom allotment of land has been made while the title to the same shall be held in trust by the Government, or to any Indian a ward of the Government under charge of any Indian superintendent or agent, or any Indian, including mixed bloods, over whom the Government, through its departments, exercises guardianship, and any person who shall introduce or attempt to introduce any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or intoxicating liquor of any kind whatsoever into the Indian country, which term shall include any Indian allotment while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be punished by imprisonment for not less than sixty days, and by a fine of not less than one hundred dollars for the first offense and not less than two hundred dollars for each offense thereafter: *Provided however,* That the person convicted shall be committed until fine and costs are paid. But it shall be a sufficient defense to any charge of introducing or attempting to introduce ardent spirits, ale, beer, wine, or intoxicating liquors into the Indian country that the acts charged were done under

the Cherokee Nation, and the city of Vinita, where the petitioner's alleged offense was committed. It is now, of course, a part of the State of Oklahoma.

It is not open to serious dispute that if the prohibition of the act of 1895 against "carrying into said Territory any such liquors or drinks" remains operative so far as pertains to the carrying of intoxicating liquors from another State into that part of Oklahoma which was the Indian Territory, the acts admittedly done by the petitioner constitute an offense thereunder, of which the United States District Court has jurisdiction. Whether the offense is sufficiently alleged in the indictment is another question, which, on familiar grounds, is not a proper subject-matter for inquiry on *habeas corpus*. *Ex parte Parks*, 93 U. S. 18; *Ex parte Virginia*, 100 U. S. 313, 339; *Ex parte Carll*, 106 U. S. 521; *Ex parte Belt*, 159 U. S. 95; *Ornelas* v. *Ruiz*, 161 U. S. 502. Recognizing this, counsel for the petitioner, upon the oral argument and in a supplemental brief, modified his original contentions, so as to deal with the act of 1895. As thus modified, the grounds upon which he relies are the following:

First, that the act of 1895, being a special act applicable to the Indian Territory, had the effect of superseding as to that Territory the existing general statute against the introduction and sale of intoxicating liquors in the Indian country.

Secondly, that the act of 1897, being amendatory of the general statute against the introduction and sale of intoxicating liquors in the Indian country, did not apply to the Indian Territory, because that Territory was covered by the special act of 1895.

---

authority, in writing, from the War Department or any officer duly authorized thereunto by the War Department.

SEC. 2. That so much of the Act of the twenty-third day of July, eighteen hundred and ninety-two, as is inconsistent with the provisions of this Act is hereby repealed."

Thirdly, that the jurisdiction cannot be rested upon the act of 1897, because the place where the alleged offense was committed was not Indian country within the meaning of that act, since there was no Indian title remaining in the town site of Vinita; the insistence being that where there is no Indian title, no inalienable land, and no alloted land held in trust, there can be no "Indian country."

Fourthly, that, whether the act of 1895 or the act of 1897 would otherwise be applicable, these acts were both repealed, as to that part of Oklahoma which was formerly the Indian Territory, by the force of the Oklahoma Enabling Act of June 16, 1906, c. 3335, 34 Stat. 267, under the authority of which the constitution of Oklahoma was adopted and a state government established, covering the territory previously known as Oklahoma and the Indian Territory; and pursuant to which certain statutes were afterwards enacted by the state legislature, viz., an act of March 24, 1908 (Laws of 1907–8, p. 594), known as the Billups Law, being §§ 4156–4209 of the Compiled Laws of Oklahoma of 1909, and an act passed March 11, 1911, Session Laws of Oklahoma, 1910–1911, c. 70, pp. 154–156.

The contentions of the Government, on the other hand, are:

First, that the act of 1895 prohibits the liquor traffic in the Indian Territory, regardless of any question concerning the term "Indian country," or concerning the title to particular lands, or the race or color of the persons affected.

Secondly, that the extinguishment of the Indian land title to the particular *locus in quo* did not remove it from the operation of § 2139, Rev. Stat., as amended by the acts of 1892 and 1897, because (among other reasons,) a contrary intent is manifested in the treaties and statutes under which that title was extinguished.

Thirdly, That neither by admitting Oklahoma to statehood, nor by anything in the Enabling Act, did Congress

renounce its control over the interstate liquor traffic in what had been the Indian Territory.

The question whether the act of 1895 was superseded by the act of 1897 was not much discussed in the argument. It is a question of nicety, having an importance extending beyond the exigencies of the present case. In the view we take of the other questions, however, we may simplify the discussion by assuming (without conceding) that petitioner's first two points are well taken, and that the act of 1897 did not apply to the Indian Territory because that Territory was covered by the special act of 1895. This at the same time renders it unnecessary for us to consider his third contention, viz., that the *locus in quo* was not Indian country within the meaning of the act of 1897, because of the extinguishment of the Indian title.

We may thus proceed at once to the question of the effect upon the act of 1895 of the Oklahoma Enabling Act of June 16, 1906 (34 Stat. 267, c. 3335), and the admission of the State of Oklahoma into the Union pursuant thereto. Since the Government concedes that the act of 1895 has been thereby repealed saving so far as it prohibited the carrying of intoxicating liquors, etc., from another State into the Territory, the matter to be discussed is still further narrowed.

Before passing, however, it should be noted that § 2139, Rev. Stat., and the act of 1897 contain prohibitions respecting the sale of intoxicating liquor to Indians, and in this, and perhaps in other important respects, cover ground not covered by the act of 1895. We must not be understood as deciding that these prohibitions are no longer in force within what was the Indian Territory, either because of the assumed effect of the act of 1895 in superseding the previous general statute of which the act of 1897 was amendatory, or because of the Oklahoma Enabling Act and the admission of the State thereunder.

The assumption we make in favor of the petitioner is for the purposes of the present argument only.

The title and pertinent sections of the Enabling Act are set forth in the margin.[1]

---

[1] OKLAHOMA ENABLING ACT (34 Stat. 267).

"An Act to enable the people of Oklahoma and of the Indian Territory to form a constitution and state government and be admitted into the Union on an equal footing with the original states," etc.

"SECTION 1. That the inhabitants of all that part of the area of the United States now constituting the Territory of Oklahoma and Indian Territory, as at present described, may adopt a constitution and become the State of Oklahoma, as hereinafter provided: *Provided,* That nothing contained in the said constitution shall be construed to limit or impair the rights of person or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this Act had never been passed.

"SEC. 2. That all male persons over the age of twenty-one years, who are citizens of the United States, or who are members of any Indian nation or tribe in said Indian Territory and Oklahoma, and who have resided within the limits of said proposed State for at least six months next preceding the election, are hereby authorized to vote for and choose delegates to form a constitutional convention for said proposed State; and all persons qualified to vote for said delegates shall be eligible to serve as delegates; * * * *

"SEC. 3. * * * Said convention shall, and is hereby authorized to, form a constitution and State government for said proposed State. * * * And said convention shall provide in said constitution: .

*       *       *       *       *       *       *       *

"Second. That the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within those parts of said State now known as the Indian Territory and the Osage Indian Reservation and within any other parts of said State which existed as Indian reservations on the first day of January, nineteen hundred and six, is prohibited for a period of twenty-one years from the date of the admission of said State into the Union, and there-

It will be observed that its first section provides that
nothing in the constitution of the new State shall be con-

---

after until the people of said State shall otherwise provide by amend-
ment of said constitution and proper State legislation. Any person,
individual or corporate, who shall manufacture, sell, barter, give away,
or otherwise furnish any intoxicating liquor of any kind, including
beer, ale, and wine, contrary to the provisions of this sectien, or who
shall, within the above described portions of said State, advertise for
sale or solicit the purchase of any such liquors, or who shall ship or in
any way convey such liquors from other parts of said State into the
portions hereinbefore described, shall be punished, on conviction
thereof, by fine not less than fifty dollars and by imprisonment not
less than thirty days for each offense: *Provided,* That the legislature
may provide by law for one agency under the supervision of said State
in each incorporated town of not less than two thousand population
in the portions of said State hereinbefore described; and if there be no
incorporated town of two thousand population in any county in said
portions of said State, such county shall be entitled to have one such
agency, for the sale of such liquors for medicinal purposes; and for the
sale, for industrial purposes, of alcohol which shall have been denatur-
ized by some process approved by the United States Commissioner of
Internal Revenue; and for the sale of alcohol for scientific purposes to
such scientific institutions, universities, and colleges as are authorized
to procure the same free of tax under the laws of the United States;
and for the sale of such liquors to any apothecary who shall have ex-
ecuted an approved bond, in a sum not less than one thousand dollars,
conditioned that none of such liquors shall be used or disposed of for
any purpose other than in the compounding of prescriptions or other
medicines, the sale of which would not subject him to the payment of
the special tax required of liquor dealers by the United States, and the
payment of such special tax by any person within the parts of said
State hereinabove defined shall constitute prima facie evidence of his
intention to violate the provisions of this section. No sale shall be
made except upon the sworn statement of the applicant in writing
setting forth the purpose for which the liquor is to be used, and no sale
shall be made for medicinal purposes except sales to apothecaries as
hereinabove provided unless such statement shall be accompanied by
a bona fide prescription signed by a regular practicing physician, which
prescription shall not be filled more than once. Each sale shall be duly
registered, and the register thereof, together with the affidavits and
prescriptions pertaining thereto, shall be open to inspection by any.

strued "to limit or affect the authority of the Government
of the United States to make any law or regulation re-

---

officer or citizen of said State at all times during business hours. Any
person who shall knowingly make a false affidavit for the purpose afore-
said shall be deemed guilty of perjury. Any physician who shall pre-
scribe any such liquor, except for treatment of disease which after his
own personal diagnosis he shall deem to require such treatment, shall,
upon conviction thereof, be punished for each offense by fine of not less
than two hundred dollars or by imprisonment for not less than thirty
days, or by both such fine and imprisonment; and any person con-
nected with any such agency who shall be convicted of making any
sale or other disposition of liquor contrary to these provisions shall be
punished by imprisonment for not less than one year and one day.
Upon the admission of said State into the Union these provisions shall
be immediately enforceable in the courts of said State.

"Third. That the people inhabiting said proposed State do agree
and declare that they forever disclaim all right and title in or to any
unappropriated public lands lying within the boundaries thereof, and
to all lands lying within said limits owned or held by any Indian, tribe,
or nation; and that until the title to any such public land shall have
been extinguished by the United States, the same shall be and remain
subject to the jurisdiction, disposal, and control of the United States."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

SEC. 4 provides for the submission to the people of the constitution
to be adopted by the constitutional convention, and the admission of
the State (on ratification of the constitution by the people) "on an
equal footing with the original States."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"SEC. 13. That said State when admitted as aforesaid shall con-
stitute two judicial districts, to be known as the eastern district of
Oklahoma and the western district of Oklahoma; the said Indian Terri-
tory shall constitute said eastern district, and the said Oklahoma
Territory shall constitute said western district. &ast; &ast; &ast; The circuit
and district courts for each of said districts, and the judges thereof,
respectively, shall possess the same powers and jurisdiction and perform
the same duties required to be performed by the other circuit and
district courts and judges of the United States, and shall be governed
by the same laws and regulations." &ast; &ast; &ast;

"SEC. 21. &ast; &ast; &ast; All laws in force in the Territory of Oklahoma
at the time of the admission of said State into the Union shall be in

specting such Indians, their lands, property or other rights
by treaties, agreement, law, or otherwise, which it would
have been competent to make if this act had never been
passed." Also that § 3 requires that the constitution shall
prohibit the manufacture and sale of intoxicating liquors
within those parts of the proposed State known as the
Indian Territory and the Osage Indian Reservation, and
within any other parts of said State which existed as
Indian reservations on January 1, 1906, and shall pro-
hibit the shipment or conveyance of such liquors from
other parts of the State into the portions just described;
the prohibition to continue for a period of 21 years, and
thereafter until the people shall otherwise provide by
constitutional amendment and proper state legislation;
with a proviso for the establishment of state agencies for
the sale of liquors for medicinal purposes and to bonded
apothecaries, of denaturized alcohol for industrial pur-
poses and of alcohol for scientific purposes; and with
elaborate provisions for carrying the prohibition into ef-
fect and preventing any abuse of the limited privileges
conferred; it being declared, at the same time, that "Upon
the admission of said State into the Union these provisions
shall be immediately enforceable in the courts of said
State."

Pursuant to this act, a constitutional convention pre-
pared and submitted to the people for adoption a consti-
tution containing the clauses thus prescribed by Congress.
At the same time a separate constitutional provision was
submitted, for establishing state-wide liquor prohibition,
substantially in the same terms and subject to the same
provisions that were prescribed, with respect to the Indian
Territory and the Indian reservations, by the Enabling

force throughout said State, except as modified or changed by this
Act or by the constitution of the State, and the laws of the United
States not locally inapplicable shall have the same force and effect
within said State as elsewhere within the United States."

Act. The constitution and the separate constitutional provision were duly adopted by the people, and on November 16, 1907, by proclamation of the President, Oklahoma was admitted as a State of the Union.

No doubt the Enabling Act, followed by the adoption of the constitution therein prescribed and the admission of the new State, had the effect of remitting to the state government the enforcement of the prohibition respecting the manufacture, sale, barter, etc., of intoxicating liquors within the State, and respecting commerce in such liquors conducted wholly within the State; and, to the extent that the scheme of prohibition established by the Enabling Act covered the same field that had been covered by the act of 1895, the latter act must be considered as impliedly repealed. But the act of 1895 included offenses that are not covered by the prohibition scheme of the Enabling Act; it prohibited the carrying of intoxicating liquors from other States into territory that was included in the State of Oklahoma. And the question for present solution is whether the act of 1895, having been partially repealed as just indicated, remains in force as a prohibition against such interstate traffic. In deciding it we shall do well to bear in mind that the offense of importing or "introducing" or "carrying in" such liquors into a protected district is different in its nature and readily distinguishable from the offenses of manufacturing, selling, etc., within the district; that from the earliest times they have been treated in Federal legislation as different offenses; that Congress for many years has consistently pursued the policy of forbidding sales of liquor to Indians and excluding it from country occupied by them; that the prohibition of importations has been deemed necessary to effectuate the purpose of preventing the use of it in protected districts; that the act of 1895 was passed for the evident purpose of enforcing the two-fold prohibition in the Indian. Territory; and that by agreements with the Indian tribes

inhabiting the Territory (as will appear below) the United States was, to some extent at least, pledged to maintain the prohibition. Besides these considerations, it is to be noted that the Enabling Act, while containing most stringent clauses for preventing (at least for twenty-one years) the manufacture of and traffic in liquors within the Indian Territory, and their transportation from other parts of the new State into the Territory, imposes no duty upon the new State with respect to preventing liquors from being brought into the Territory from other States.

In view of these considerations, and others to be mentioned, it seems to us that Congress, so far from intending by the Enabling Act to repeal so much of the act of 1895 as prohibits the carrying of intoxicating liquors into the Indian Territory from points without the State, framed the Enabling Act with a clear view of the distinction between the powers appropriate to be exercised by the new State over matters within her borders, and the powers appropriate to be exercised by the United States over traffic originating beyond the borders of the new State and extending within the Indian Territory.

In addition, there is the proviso contained in section one of the act, that nothing contained in the state constitution shall be construed "to limit or affect the right or authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this act had never been passed." It is contended that this does not preserve the existing laws and regulations respecting the Indians, but rather excludes the inference of their continued force and existence by indicating a purpose on the part of Congress to thereafter enact regulations for the protection of the Indians in Oklahoma if necessity requires. This, we think, is an inadmissible

construction. We deem it unreasonable to suppose that Congress, possessing the constitutional power and recognizing the moral duty to make laws and regulations respecting the Indians, and having already established laws and regulations of this character applicable in the Territory, including some that were established by treaties and agreements, should resolve to wipe them out, and thereby impose upon future Congresses the labor and difficulty of establishing other proper laws and regulations in their stead. In our opinion, the purpose expressed in the proviso to reserve to the Government of the United States the authority to make laws and regulations in the future respecting the Indians is, under the circumstances, evidence tending to negative a purpose to repeal by implication the existing laws and regulations on the subject.

Of course an act of Congress may repeal a prior treaty as well as it may repeal a prior act. *The Cherokee Tobacco*, 11 Wall. 616; *Fong Yue Ting* v. *United States*, 149 U. S. 698, 720; *Ward* v. *Race Horse*, 163 U. S. 504, 511; *Draper* v. *United States*, 164 U. S. 240, 243.

But it is a settled rule of statutory construction that repeals by implication are not favored, and will not be held to exist if there be any other reasonable construction. *Cope* v. *Cope*, 137 U. S. 682, 686, and cases cited; *Ward* v. *Race Horse, supra.*

The reservation of the authority of Congress to legislate in the future respecting the Indians residing within the new State is clearly supportable under the Federal Constitution, Art. I, § 8, which confers upon Congress the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." It has been repeatedly held by this court that under this clause traffic or intercourse with an Indian tribe or with a member of such a tribe is subject to the regulation of Congress, although it be within the limits of a State. *United States* v. *Holliday*, 3 Wall. 407, 418; *United States*

v. *43 Gallons of Whiskey*, 93 U. S. 188, 195, 197; *Dick* v. *United States*, 208 U. S. 340, and cases cited

And it is as clearly consistent with the Constitution to maintain in force an existing act of Congress relating to such traffic and intercourse, so that it shall continue effective within the limits of the new State, as it is to reserve the right to enact new laws in the future upon the same subject-matter.

We must read the proviso contained in § 1 of the Enabling Act, and also the declaration in § 21 that "The laws of the United States not locally inapplicable shall have the same force and effect within the said state as elsewhere within the United States," in the light of the existing relations, then recently established by treaties and by acts of Congress, between the Government of the United States and the Five Civilized Tribes that occupied the area known as the Indian Territory. Although those tribes had long been treated more liberally than other Indians, they remained none the less wards of the Government, and in all respects subject to its control. *Cherokee Nation* v. *Southern Kansas R. R. Co.*, 135 U. S. 641, 653, and cases cited. And after Congress, in the year 1893, had inaugurated the policy of terminating their tribal existence and government and allotting their lands in severalty (act of March 3, 1893, c. 209, § 16; 27 Stat. 645), agreements were negotiated by the Dawes Commission with each of the tribes designed to carry out the objects indicated; and in each of those agreements there was some recognition of the importance of preserving restrictions upon the introduction of intoxicating liquors from without and the traffic in them within the Indian Territory.

The agreement with the Seminoles was made in 1897 (30 Stat. 567), with the Creeks in 1901 and 1902 (31 Stat. 861, 32 Stat. 500), with the Choctaws and Chickasaws in 1898 (30 Stat. 507) and in 1902 (32 Stat. 641), and with the Cherokees in the latter year (32 Stat. 716).

Section 73 of the agreement with the Cherokees (32 Stat. 727) continued in force in that Nation the fourteenth section of an act of June 28, 1898, entitled "An act for the protection of the people of the Indian Territory and for other purposes," (30 Stat. 500), which contained a proviso against the sale of liquor in the Territory, and against the introduction thereof into the Territory.

In the first Choctaw and Chickasaw agreement there was a provision (30 Stat. 509) that no law or ordinance should be passed by any town interfering with the enforcement of or conflicting with the laws of the United States in force in said Territory, "and the United States agrees to maintain strict laws in the territory of the Choctaw and Chickasaw tribes against the introduction, sale, barter, or giving away of liquors and intoxicants of any kind or quality."

In the Choctaw-Chickasaw agreement of 1902, § 64, which provided for the cession to the United States of lands at the Sulphur Springs, contained a provision (32 Stat. 656) that "Until otherwise provided by Congress, the laws of the United States relating to the introduction, possession, sale, and giving away of liquors or intoxicants of any kind in the Indian country or Indian Reservations shall be applicable to the lands so ceded, and said lands shall remain within the jurisdiction of the United States court for the Southern District of Indian Territory."

The Seminole agreement likewise provided that "the United States agrees to maintain strict laws in the Seminole country against the introduction, sale, barter, or giving away of intoxicants of any kind or quality." (30 Stat. 568.)

The first Creek agreement provided that "The United States agrees to maintain strict laws in said Nation against the introduction, sale, barter, or giving away of liquors or intoxicants of any kind whatsoever." (Act of March 1, 1901, c. 676, § 43, 31 Stat. 872.) And this was not modi-

fied by the supplemental agreement. (Act of June 30, 1902, c. 1323, 32 Stat. 500.)

It seems to us that the provisions of the Enabling Act show that Congress recognized that, because of these agreements or otherwise, the Government of the United States was under a duty to the inhabitants of the Indian Territory different from its duty to the inhabitants of the other territory that went to form the new State. We are unable otherwise to explain the insertion in the proposed constitution of the clause establishing liquor prohibition within the Indian Territory, and the exclusion of the other territory from the operation of this clause. This action is indicative of a purpose on the part of Congress to fulfill the spirit as well as the letter of the agreements with the Five Tribes. There were differences in those treaties, so far as the liquor traffic is concerned. But in the Enabling Act all the tribes were treated alike, and in a manner to fulfill the amplest promise given to any tribe, so far—*but only so far*—as the establishment of general prohibition *within* the new State was concerned.

But if the Federal law that had prevented the bringing in of intoxicating liquors from without the State was at the same time repealed, the pledges of the Government were thereby in a material part broken. For manifestly it would be of comparatively little use to prohibit the manufacture of intoxicating liquors within the Territory and their shipment from other parts of the State into the Territory, if at the same time all laws prohibiting the introduction of such liquors from other States into the Territory were to be repealed.

And it is clear that in framing the Enabling Act, Congress was mindful not only of its jurisdiction over commerce with the Indian tribes, but was mindful that traffic in liquors between one State and another is subject only to the control of Congress. *Bowman* v. *Chicago & N. W.*

*Railway Co.*, 125 U. S. 465; *Leisy* v. *Hardin*, 135 U. S. 100; *Lottery Case*, 188 U. S. 321.

It is argued that the result of engrafting the provisions of the Enabling Act upon that part of the act of 1895 which remains unrepealed is a statutory system "so incongruous and indefinite in purpose and effect that it would be impossible to enforce it."

This contention is based largely upon the fact that the prohibition of the manufacture, sale, barter, etc., of intoxicating liquors within those parts of the State that were known as the Indian Territory and Osage Indian Reservation, and the other parts of the State which were Indian reservations on January 1, 1906, and the prohibition of the shipment or conveyance of such liquors from other parts of the State into the portions just mentioned, is subject to a proviso that the legislature may provide by law for state agencies for the sale of such liquor for medicinal purposes, for the sale of denaturized alcohol for industrial purposes, for the sale of alcohol for scientific purposes, and for the sale of liquors to bonded apothecaries.

It is argued that in the *interim* between the admission of the State and the enactment of legislation for establishing state liquor agencies, there would necessarily be a period of considerable duration (as the event happened, it was over four months,) during which, in what was formerly the Indian Territory, it would be doubtful whether sales of liquor would be punishable in the Federal or in the state courts, and whether according to the act of 1895 or under the different penalties of the Enabling Act.

It may be conceded that until the State took action, in accordance with the constitution, for the establishment of agencies for the sale of liquors for the limited purposes mentioned, such sales could not be made at all, and that all sales which otherwise were in violation of the prohibition of the constitution were punishable in the courts; to what

extent punishable in the Federal courts, and to what extent in the state courts, it is not worth while to spend time in considering. Some temporary confusion and uncertainty may be unavoidable upon the establishment of a state government under such conditions; but this has little bearing upon the question before us.

A more serious argument is that which is based upon the effect of the constitutional provision respecting the establishment and maintenance of state agencies for the disposition of liquor, after the state legislature shall have provided by law for such agencies; for when such a law has been enacted we are brought to the permanent condition of things that was in the contemplation of Congress.

And here it is urged that as to the offense of carrying intoxicating liquor into the Territory, it must be that the introduction thereof for supplying the needs of the state agencies was permitted by the Enabling Act, and that the provisions of the act of 1895 must be taken to be repealed to that extent, leaving the act in force against the introduction of liquor for other purposes. But it is said (to quote from the brief): "If that was the purpose of the Enabling Act it entirely fails to express it, because it does not provide who may so introduce liquors into the Territory, and who may not, for the purpose of supplying local agencies, and the law would be so framed that neither court nor layman could ascertain by reading it by whom and under what circumstances such introduction was innocent or criminal."

No doubt, in order to give effect to the constitutional provision that permits the legislature to provide by law for agencies under the supervision of the State for the sale of liquors for the limited purposes specified, it is necessary that the state agencies shall procure these liquors from some source.

The authorization is in the form of a proviso. Whether, by fair construction, it qualifies merely the force of the

clause to which it is subjoined—that is, qualifies merely the prohibition against the manufacture, sale, etc., of intoxicating liquors within the Indian Territory and the Indian reservations, and the prohibition against the shipment of such liquors from other parts of the State into the portions mentioned—or whether, on the other hand, it has the effect of permitting liquors to be introduced from without the State, is a question that need not detain us. Upon the former construction, the State would presumably be obliged to cause the liquors to be manufactured within its own borders for the supply of its distributing agencies. Upon the latter construction, the State would be at liberty to import the necessary liquors from beyond its borders. In the one case, as in the other, the operation would be lawful and innocent when conducted under the authority of the State; otherwise unlawful. It is not to be presumed that the State would conceal or cloak its operations, or leave its agents without evidence of their authority. We can see no more practical difficulty here than there is in determining in any other matter that is subject to public regulation—for instance, the killing or transportation of game, the manufacture or sale of liquor—whether a given act is done with or without a license from the State. The argument *ab inconvenienti* is without force.

We are reminded that "laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid," (*United States* v. *Brewer*, 139 U. S. 278, 288) and that ambiguity and uncertainty about the meaning of a criminal statute ought to be resolved by a strict interpretation in favor of the liberty of the citizen.

But there is no uncertainty or ambiguity about the prohibition of the act of 1895 against carrying intoxicating liquors into the Indian Territory. It is not suggested that there is any express repeal of that prohibition. And

we are unable to see that a *pro tanto* repeal by implication leaves anything doubtful or ambiguous in the meaning of that which remains.

It is not our purpose to qualify the doctrine established by repeated decisions of this court that the admission of a new State into the Union on an equal footing with the original States imports an equality of power over internal affairs. The cases cited by counsel for the petitioner under this head are cases that dealt with matters wholly internal. *United States* v. *McBratney,* 104 U. S. 621; *Draper* v. *United States,* 164 U. S. 240; *Matter of Heff,* 197 U. S. 488, 505. And see *Ward* v. *Race Horse,* 163 U. S. 504; *United States* v. *Celestine,* 215 U. S. 278, 288; *United States* v. *Sutton,* 215 U. S. 291, 294; *Hallowell* v. *United States,* 221 U. S. 317, 323; *Dick* v. *United States,* 208 U. S. 340.

The most recent decision of this court upon the subject of the proper construction of acts of Congress passed for the admission of new States into the Union is *Coyle* v. *Smith,* 221 U. S. 559; where it was held that the Oklahoma Enabling Act (34 Stat., c. 3335, p. 267), in providing that the capital of the State should temporarily be at the City of Guthrie, and should not be changed therefrom previous to the year 1913, ceased to be a limitation upon the power of the State after its admission. The court, however, was careful to state (221 U. S. 574): "It may well happen that Congress should embrace in an enactment introducing a new State into the Union legislation intended as a regulation of commerce among the States, or with Indian tribes situated within the limits of such new state, or regulations touching the sole care and disposition of the public lands or reservations therein, which might be upheld as legislation within the sphere of the plain power of Congress. But in every such case such legislation would derive its force not from any agreement or compact with the proposed new State, nor by reason of its acceptance of such enactment as a term of admission, but

solely because the power of Congress extended to the subject, and therefore would not operate to restrict the State's legislative power in respect of any matter which was not plainly within the regulating power of Congress."

We are here dealing with one of those matters such as are referred to in this citation. The power of Congress to regulate commerce between the States, and with Indian tribes situate within the limits of a State, justifies Congress when creating a new State out of territory inhabited by Indian tribes, and into which territory the introduction of intoxicating liquors is by existing laws and treaties prohibited, in so legislating as to preserve those laws and treaties in force to the extent of excluding interstate traffic in intoxicating liquors that would be inconsistent with the prohibition. *Dick* v. *United States*, 208 U. S. 340, 353.

This being so, and since we find in the Oklahoma Enabling Act no repeal, express or implied, of the act of 1895 so far as pertains to the carrying of liquor from without the new State into that part of it which was the Indian Territory (saving as to liquor brought in by the State for the use of state agencies established under the provisions of the Enabling Act), it follows, upon the admitted facts, that the United States District Court has jurisdiction to punish the petitioner for the offense that he has committed.

The petition for a writ of *habeas corpus* and the accompanying application for *certiorari* will be

*Denied.*