# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable M. D. Emerson
County Attorney
Lamar County
Paris, Texas

Dear Sir:

Opinion No. O-2802
Re: Suffrage rights of an Indian
in Texas relating to the payment
of a poll tax.

Your letter of October 1, 1940, requests a legal opinion from this Department touching questions stated by you as follows:

"1. Under Articles 7046 and 2960 of the Revised Civil Statutes, is every Indian in Texas exempt from paying poll tax, and allowed to vote without such poll tax?

"2. If the above question is answered in the affirmative, then how much Indian blood is required for a person to claim exemption under these statutes, and what degree and method of proof is required to entitled the person to such exemption from poll tax?"

Section 1 of Article VI of the Constitution of Texas prohibits certain classes of persons from voting in Texas, but does not include an Indian within the prohibitions.

Section 2 of Article VI of the Constitution of Texas provides in part as follows:

"Every person subject to none of the foregoing disqualifications, who shall have attained the age of twenty-one years, and who shall be a citizen of the United States and who shall have resided in this State one year next preceding an election and the last six

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable M. D. Emerson, Page 2

months within the district or county in which such person offers to vote, shall be deemed a qualified elector; . . . And provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. . . ." (Emphasis ours)

Article 7046, Revised Civil Statutes of Texas, provides in part as follows:

"Poll Tax. -- There shall be levied and collected from every person between the ages of twenty-one and sixty years, resident within this State on the first day of January of each year (Indians not taxed, and persons insane, blind, deaf or dumb, or those who have lost one hand or foot, or are permanently disabled, excepted) an annual poll tax. . . ."

Article 2955, Revised Civil Statutes of Texas, follows Section 2 of Article VI of the Constitution, and Article 2959, Revised Civil Statutes, provides in part:

"A poll tax shall be collected from every person between the ages of twenty-one and sixty years who resided in this State on the first day of January preceding its levy, Indians not taxed, persons insane, blind, deaf or dumb, and those who have lost a hand or foot, or permanently disabled, excepted. . . ."

"All Indians born within the territorial limits of the United States are declared to be citizens of the United States. . . ." 8 U.S.C.A. § 3; State v. Kemp, 78 Pac. (2d) (Sup. Ct. of Montana); Trujillo v. Prince, 78 Pac. (2d) 145 (Sup. Ct. of New Mexico); Denison v. State, 268 Pac. 617, (Sup. Ct. of Arizona). And this is true regardless of whether an Indian is still under the guardianship of the United States government so far as either personal or property rights are concerned.

We assume that the subject Indians are qualified electors, that is, are citizens of the United States, have attained the age of twenty-one years, and have resided in the State of Texas and within the district or county the required period of time.

Honorable M. D. Emerson, Page 3

At first blush the proper construction of the words "Indians not taxed . . . excepted" would seem to be, perhaps, that no Indian in Texas is subject to a poll tax.

We are compelled, however, after deeper study, to give to the term "Indians not taxed" as employed in Articles 7046 and 2959, its historical meaning and significance as a classification, the controlling force of which will manifest itself in arriving at the proper construction of these statutes.

The term "Indians not taxed" has always appeared in the statutes levying a poll tax in Texas.

It is employed in Article I, Section 2, § 3, of the United States Constitution, as follows:

"Representatives and direct taxes shall be apportioned among the several states which may be included within this Union, according to their respective numbers, which shall be determined by adding to the whole number of free persons, including those bound to service for a term of years, and excluding Indians not taxed, three-fifths of all other persons. . . ."

This clause was, of course, amended as to the mode of apportionment of representatives among the several states by the 14th Amendment and as to taxes on incomes without apportionment by the 16th Amendment.

Section 2 of the 14th Amendment reads in part as follows:

"Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed. . . ."

In the celebrated case of Elk v. Wilkins, 112 U. S. 94 (decided November 3, 1884), Mr. Justice Gray, in delivering the majority opinion, discussed the term "Indians not taxed" as follows:

"Under the Constitution of the United States, as originally established, 'Indians not taxed' were excluded from the persons according to whose numbers representatives and direct taxes were apportioned among the several states; and Congress had and exercised the power to regulate commerce with the Indian tribes, and the members thereof, whether within or without the boundaries of one of the states of the Union.  The Indian tribes, being within the territorial limits of the United States, were not, strictly speaking, foreign states; but they were alien nations, distinct political communities, with whom the United States might and habitually did deal, as they thought fit, either through treaties made by the President and Senate, or through acts of Congress in the ordinary forms of legislation.  The members of those tribes owed immediate allegiance to their several tribes, and were not part of the people of the United States. They were in a dependent condition, a state of pupilage, resembling that of a ward to his guardian.  Indians and their property, exempt from taxation by treaty or statute of the United States, could not be taxed by any state. . . . ."

This exemption of tribal Indians from State taxation has consistently been upheld by the courts of our land.  In State v. Campbell, 53 Minn. 354, 55 N. W. 553, it was said:

"There is no decision of the Federal courts that a State can, even in the absence of a restriction in a treaty or in the Act admitting the State into the Union, extend its laws, either civil or criminal, over tribal Indians residing under the care of the general government upon a reservation set apart by it for that purpose."

In Choctaw & Gulf R. R. v. Harrison, 235 U. S. 292, 296, the Supreme Court said:

"In the region formerly known as Indian Territory -- now within the state of Oklahoma -- the Choctaw and Chickashaw Indians as wards of the United States, own a large area of segregated and unalloted lands containing valuable coal deposits, which are not subject to taxation by the state.  Tiger v. Western Investment Co., 221 U. S. 286, 310, 312; Ex parte Webb, 225 U. S. 663, 684."

Honorable M. D. Emerson, Page 5

The conception of the term "Indians not taxed" as meaning Indians who are not subject to taxation by the State is found in the case of United States v. Kagama, 118 U. S. 375, 378, wherein the court said:

"In declaring the basis on which representation in the lower branch of the Congress and direct taxation should be apportioned, it was fixed that it should be according to numbers, excluding Indians not taxed, which, of course, exluded nearly all of that race, but which meant that if there were such within a State as were taxed to support the government, they should be counted for representation, and in the computation for direct taxes levied by the United States."

Further, in this case, the Supreme Court said:

"These Indian tribes are the wards of the nation. They are communities dependent on the United States. Dependent largely for their daily food. Dependent for their political rights. They owe no allegiance to the State, and receive from them no protection."

The controlling consideration is whether the status of the Indian renders him subject to taxation by the State. In. U. S. v. Porter, 22 Fed. (2d) 365, it was said:

"The personal property described in the complaint is owned and held by an Indian, outside of an Indian reservation, and we perceive no reason why it is not subject to taxation by the State. . . . He lives outside of the reservation, under the protection of the State, and it would be going a long way to hold that he is under no obligation to contribute to the expenses of the State government."

Mr. Justice Harlan, in delivering the dissenting opinion in Elk v. Wilkins, supra, defines "Indians not taxed" as follows:

"Indians not taxed were those who held tribal relations, and, therefore, were not subject to the authority of any State and were subject only to the

Honorable M. D. Emerson, Page 6

authority of the United States under the power conferred upon Congress in reference to Indian tribes in this country."

Recognizing, therefore, as we must, that the term "Indians not taxed" historically signifies a classification of Indians, it is apparent that the use of the term in Articles 7046 and 2955 represents an intended classification, and implies that there were Indians who were, or might subsequently become, subject to taxation by the State of their residence.

Obviously, if it were intended to exempt all Indians from the payment of a poll tax in Texas, the exception would have provided "Indians .... excepted", rather than "Indians not taxed .... excepted".

The exclusion of Indians not taxed evinced a purpose to include those who were subject to being taxed by reason of their change in status.

A poll tax, of course, is not a tax upon property. Its levy is not dependent upon the ownership by the citizen of any personal or real property subject to taxation. It is not a tax upon the exercise of the right of suffrage. It is a tax authorized by Section 1 of Article VIII of the Constitution of Texas, which says, "The Legislature may impose a poll tax", and may be described as a tax upon the enjoyment by a citizen of Texas of the privileges and franchises of citizenship.

An Indian who has severed his tribal relations, who does not live upon a reservation and is not a ward of the Federal government, and therefore is not subject to the exclusive authority of the Federal government, has become merged with the mass of the American people, and is subject, as other citizens, to the jurisdiction of the State. He has lost his classification as an "Indian not taxed" and has become an Indian taxed in the same manner as all other citizens of the State. As such, he is subject, when a citizen of Texas, to the payment of the constitutional and statutory poll tax, and to the same requirements with reference to the payment of same before he may be allowed to vote in any election in the State.

Of course, an Indian who has not severed his tribal relations, and who is living upon a government reservation as

Honorable M. D. Emerson, Page 7

a ward of the government, retains his status as an "Indian not taxed" and is exempt from the payment of a poll tax. We have assumed, however, that the subject Indians of your request do not fall within this classification.

We have carefully considered a letter opinion of this Department dated December 30, 1938 (Vol. 384, p. 52, Letter Opinions) which holds that an Indian in Texas who renders no property for taxation is not subject to the payment of a poll tax, whereas, one who pays a property tax in Texas is also subject to a poll tax. Having concluded that this former opinion is in error, for the reasons stated herein, it is expressly overruled.

In view of the foregoing discussion and answer to the first question propounded by you, it becomes unnecessary to discuss your second question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Zollie C. Steakley
Assistant

ZCS:BBB

APPROVED OCT 9, 1940

_Gerald C. Mann_
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN