**UNITED STATES of America et al., Plaintiffs-Appellees,**

v.

**STATE TAX COMMISSION OF the STATE OF MISSISSIPPI et al., Defendants-Appellants.**

**No. 73–3034.**

United States Court of Appeals, Fifth Circuit.

Oct. 27, 1976.

James Holmes Haddock, Carl F. Andre, A. F. Summer, Atty. Gen. of Miss., Jackson, Miss., for defendants-appellants.

S. Bobo Dean, Washington, D. C., for Miccosukee tribe of Indians of Florida.

Robert E. Hauberg, U. S. Atty., James B. Tucker, Asst. U. S. Atty., Jackson, Miss., Wallace H. Johnson, Asst. Atty. Gen., Lands Div., Larry G. Gutterridge, Jacques B. Gelin, Dept. of Justice, Washington, D. C., for plaintiffs-appellees.

Before COLEMAN, CLARK and RO-NEY, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.

We wish to comment on one facet of the petition for rehearing en banc.

The order denying the original petition for rehearing, 535 F.2d at 302, stated:

"The Treaty of Dancing Rabbit is a part of the Supreme Law, United States Constitution, Article 6, Clause 2, and it cannot be altered by an Act of Congress; Congress cannot obliterate the jurisdiction of Mississippi over its citizens."

Concentrating on the first portion of this sentence, and ignoring the second, the petition for rehearing says, "In fact, case after case has held exactly the opposite."

■ It is certainly true that on a number of occasions the Supreme Court has held that an Act of Congress may supersede treaties with *Indian tribes.* It was so held in *The Cherokee Tobacco,* 11 Wall. (78 U.S.) 616, 621, 20 L.Ed. 227 (1870); *Ward v. Race Horse,* 163 U.S. 504, 511, 16 S.Ct. 1076, 41 L.Ed. 244 (1896); *Draper v. United States,* 164 U.S. 240, 243, 17 S.Ct. 107, 41 L.Ed. 419 (1896); *Thomas v. Gay,* 169 U.S. 264, 271, 18 S.Ct. 340, 42 L.Ed. 740 (1898); *Lone Wolfe v. Hitchcock,* 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903) and *Ex Parte Webb,* 225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248 (1912). These cases, of course, were concerned with disputes between the government and Indian tribes, wards of the Nation, communities dependent on the United States, *owing no allegiance to the States* (emphasis added) and receiving from them no protection, *Lone Wolfe v. Hitchcock, supra,* 187 U.S. at 567, 23 S.Ct. [216] at 222 (quoting *United States v. Kagama,* 1885, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228).

However, the *Hitchcock* Court was careful to note the provisions of the Act of March 3, 1871, which put an end to the practice of making treaties with Indian tribes. That Act specified that

"no obligation of any treaty lawfully made and ratified with any such Indian nation or tribe prior to March third, eighteen hundred and seventy-one, shall be hereby invalidated or impaired."

The *Hitchcock* opinion continued:

"That Indians who had not been fully emancipated from the control and protection of the United States are subject, at least so far as the tribal lands were concerned, to be controlled by direct legislation of Congress, is also declared in *Choctaw Nation v. United States,* 119 U.S. 1, 27 [7 S.Ct. 75, 30 L.Ed. 306] and *Stephens v. Cherokee Nation,* 174 U.S. 445, 483 [19 S.Ct. 722, 43 L.Ed. 1041]."

When Congress, in 1871, reaffirmed the validity of all prior Indian treaties, the Treaty of Dancing Rabbit had been on the books for forty years, and for nearly that long the Choctaw Indian Tribe had been removed to the Indian Territory. Those of Choctaw blood who chose to remain in Mississippi as citizens had for that long been emancipated from the control and protection of the United States, subject to all the obligations of state citizenship. As noted in our prior opinions in this case, the United States government took no notice of the Mississippi Choctaws until 1918, when, as a "gratuity", it extended financial relief, most of which was to have been repaid.

■ Leaving aside the factor of intervening state sovereignty over its citizens in matters left to the states under our federal system, the lengthy list of cases cited *supra* make it clear that the Dancing Rabbit Treaty may not be superseded by implication— see, particularly, *Ward v. Race Horse,* 163 U.S. at 511, 16 S.Ct. 1076.

The dispositive point is that throughout a period of 145 years the Congress has never passed an act specifying a purpose to supersede the Treaty of Dancing Rabbit or declaring that the State of Mississippi shall be

deprived of the jurisdiction appropriately belonging to it. To the contrary, as pointed out in our previous opinions, especially in the legislative history appearing at 535 F.2d 306, Congress has repeatedly declined earnest solicitations that it take such action with reference to the Mississippi Choctaws.

The plenary power of Congress to legislate with reference to Indians, including its right to appropriate funds for their benefit, as gratuities or otherwise, is not disputed. In the preceding opinion, 535 F.2d 306, we have stated that "As to the dealings between the Secretary of the Interior and the United States government, on the one hand, and the Mississippi Choctaws, on the other, we do not purport to pass on their validity *vis a vis* the participants", 535 F.2d 306.

What we hold, and all that we hold, is that "the jurisdiction of the State of Mississippi over its citizens of Choctaw Indian blood stands unimpaired."

Quoting the Supreme Court, "we cannot remake history", *DeCoteau v. District County Court for Tenth Judicial District,* 1975, 420 U.S. 425, 95 S.Ct. 1082, 1095, 43 L.Ed.2d 300.

The petition for rehearing en banc is DENIED.