## EVANS v. VICTOR, U. S. Marshal, et al.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1913.)

No. 3,863.

*(Syllabus by the Court.)*

**1.** INDIANS (§ 32*)—"INDIAN COUNTRY"—CRITERION.

The criterion to determine what is "Indian country" is that all the country which was declared to be Indian country by the Act of June 30, 1834, c. 161, 4 Stat. 729, remains Indian country as long as the Indians retain their original title, and in the absence of a different provision by treaty or by act of Congress ceases to be Indian country whenever that title is extinguished.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 4, 52, 53, 57, 58; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 4, pp. 3545–3549.]

**2.** INDIANS (§ 32*)—INDIAN COUNTRY—LANDS IN CITIES IN OKLAHOMA—INTOXICATING LIQUORS—AUTHORITY OF OFFICERS TO SEARCH.

The lands within the original corporate limits of the city of Muskogee, and of other cities in the state of Oklahoma, the original Indian title to which has been extinguished and the unrestricted title to which has been vested in purchasers and their grantees under the Act of June 28, 1898, c. 517, § 14, 30 Stat. 499, and the Act of March 1, 1901, c. 676, §§ 10, 24, 31 Stat. 864, 868, are not Indian country.

No special officer of the Indian service, no Indian superintendent, agent or subagent, or his deputy, has authority, without a search warrant or other process, to search such lands, or the stores, houses, or other improvements thereon, owned or occupied by citizens of the United

States, for intoxicating liquors, under sections 2139 and 2140, Revised Statutes, or any other act of Congress.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 4, 52, 53, 57, 58; Dec. Dig. § 32.*]

**3. COURTS (§ 89*)—OPINIONS—NOT AUTHORITATIVE BEYOND QUESTIONS DE-CIDED.**

An opinion in a particular case, founded on special circumstances, is not applicable to cases under circumstances essentially different.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. § 89.*]

**4. INJUNCTION (§ 48*)—UNAUTHORIZED SEARCH AND THREAT TO REPEAT WAR-RANTS.**

A trespass, consisting of an unlawful search of the plaintiff's premises and the threat, under a claim of right, to repeat it at will, presents a compelling equity which gives jurisdiction to issue an injunction to prevent its repetition.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 101; Dec. Dig. § 48.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Bill by W. E. Evans against S. G. Victor, United States Marshal, for the Eastern District of Oklahoma, and Henry A. Larsen, Special Officer of the Indian Service. Judgment (199 Fed. 504) for defendants, and complainant appeals. Reversed and remanded.

J. C. Denton, of Muskogee, Okl. (W. S. Cochran, of Muskogee, Okl., on the brief), for appellant.

William J. Gregg, U. S. Atty., of Muskogee, Okl., for appellees.

Before SANBORN, Circuit Judge, and WILLIAM H. MUNGER and JACOB TRIEBER, District Judges.

SANBORN, Circuit Judge. Are the lands within the original corporate limits of the city of Muskogee and of other cities in the state of Oklahoma, the original Indian title to which has been extinguished and the unrestricted title to which has been vested in purchasers and their grantees under the Act of June 28, 1898, c. 517, 30 Stat. 495, and the Act of March 1, 1901, c. 676, 31 Stat. 864, 868, §§ 10 and 24, still Indian country, so that a special officer of the Interior Department, or an Indian agent, or the United States marshal, or the deputy of either of them, has authority to enter upon and search them, and the buildings and improvements upon them, without warrant or process, under sections 2139 and 2140, Revised Statutes, or any other act of Congress? This is the question which this case presents, and it is raised in this way: The plaintiff, W. E. Evans, exhibited his bill in equity in the court below against S. G. Victor, the United States marshal, and Henry A. Larsen, the chief special officer of the Indian service, to suppress the sale of intoxicating liquors among the Indian tribes, in which he alleged that the marshal by one Hubbard, his deputy, and Larsen, without any search warrant or other process, unlawfully entered and searched for intoxicating liquor the Fountain Drug Store, of which

he was and is the owner and proprietor; that this drug store was and is located on land within the original corporate limits of the city of Muskogee to which the Indian title had long prior thereto been extinguished; that the unrestricted title to this land had long before the search passed to and vested in purchasers thereof and their grantees under the Act of June 28, 1898, c. 517, 30 Stat. 495, § 14, and the Act of March 1, 1901, c. 676, 31 Stat. 861; that the defendants threaten to make further forcible searches of the plaintiff's drug store, and of his person, houses, papers, and effects, solely by virtue of their offices; that their search disturbed and demoralized his business and exposed him to shame, contempt, ridicule, and unjust suspicion, to his damage in the sum of $3,100; that if the defendants are permitted to carry out their threat and to repeat the search at will his business will be destroyed, he will continue to be exposed to suspicion, shame, and ridicule, and will suffer irreparable injury; that he is a citizen of the state of Oklahoma and resides in the city of Muskogee; and that the acts of the defendants infringe upon his personal and property rights in violation of the fourth and fifth amendments to the Constitution of the United States, and he prayed for a permanent and moved for a temporary injunction against the threatened searches. In response to the motion for the injunction the United States attorney filed a statement on behalf of the defendants to the effect, so far as it is now material, that Larsen was the chief special officer of the United States Indian service appointed by the Secretary of the Interior to suppress the sale of intoxicating liquors among the Indian tribes; that Hubbard was his deputy and the deputy marshal; that if Hubbard made the search alleged he did it under the general direction of Larsen to enter and search any premises in the Indian country where he had reasonable ground to believe intoxicating liquors were unlawfully stored or kept; that the plaintiff's drug store in the city of Muskogee is situated in the Indian country; and that Larsen and his deputy had lawful authority to search it by virtue of sections 2139 and 2140, Revised Statutes, the Act of March 1, 1907, c. 2285, 34 Stat. 1017 (U. S. Comp. St. Supp. 1911, p. 1036), and the Act of March 1, 1895, c. 145, 28 Stat. 697. Upon the bill and this statement of the United States attorney the court below heard and denied the motion for the temporary injunction, on the ground that the complainant's drug store was situated in the Indian country, and the plaintiff appealed.

Sections 2139 and 2140 of the Revised Statutes are modified remnants of section 20 of the Act of June 30, 1834, c. 161, 4 Stat. 732. The first part of that section declared that if any person should sell or dispose of spirituous liquor or wine to an Indian in the Indian country, or if any person should introduce, or attempt to introduce, such liquor or wine into the Indian country, except supplies for the army, he should forfeit and pay a fine. The second part of the section provided that if any superintendent of Indian affairs, Indian agent or subagent, or commanding officer of a military post, had reason to suspect that any white person or Indian was about to introduce, or had introduced, any spirituous liquor or wine into the Indian country, it should be lawful for him to cause the boats, stores, packages, and places of deposit of such person to be searched, the liquor or wine to be seized,

proceeded against by libel, and any ardent spirits or wine found in the Indian country to be destroyed. The first part of this section, with changes here immaterial, has descended into section 2139, and the second part into section 2140, of the Revised Statutes. Section 2139 prohibits the introduction of ardent spirits into the Indian country. Section 2140 authorizes a superintendent of Indian affairs, Indian agent or subagent, to cause the boats, stores, wagons, sleds, and places of deposit of any person who he suspects or is informed has introduced, or is about to introduce, spirituous liquor or wine into the Indian country to be searched, and the spirits, if found, to be libeled or destroyed. It is conceded by counsel for the defendants, and is settled by repeated decisions of the Supreme Court, that the power of the officers of the Interior Department, and of the officers of the army, to cause such searches and seizures is limited by the terms and the true construction of section 20 of the act of 1834, and of sections 2139 and 2140 of the Revised Statutes, to searches and seizures in the Indian country, and that they are without authority to cause such searches and seizures outside the Indian country. Bates v. Clark, 95 U. S. 204, 209, 24 L. Ed. 471; Clairmont v. United States, 225 U. S. 551, 556, 560, 32 Sup. Ct. 787, 56 L. Ed. 1201.

The Act of March 1, 1907, c. 2285, 34 Stat. 1017, and the Act of March 1, 1895, c. 145, 28 Stat. 697, which the defendants cite in justification of their acts, contain nothing which either expressly or by reasonable implication extends the power of these officers to make searches and seizures, without warrant or process, to places outside the Indian country. The act of 1907 merely confers upon the special agent of the Indian bureau for the suppression of the liquor traffic among Indians and in the Indian country, and his deputies, the same authority which is conferred by section 2140 on the Indian superintendents, the Indian agents, subagents, and the commanding officers of military posts, but no greater or more extended authority. The Act of March 1, 1895, c. 145, 28 Stat. 697, simply provided that any person who should carry any intoxicating drinks into the Indian Territory, or cause such drinks to be so carried, or should in that territory manufacture, sell, or furnish to any one any intoxicating drinks, should be subject to fine and imprisonment (section 8), and that none of the laws in force in that territory that were not in conflict with that act were repealed, or in any manner affected thereby (section 13). As section 2140 was then in force in the Indian Territory, as there was no treatment or mention of it, or of its subject, the power to search or seize, and as there was nothing in that section, or in the limitation of the power of the officers therein named to the Indian country, which was in conflict with any of the provisions of the act of 1895, that section and the limitation of the power of the officers therein mentioned to the Indian country was not "in any manner affected" by that act, and the result is that the defendants had no authority to make the search which they made and those they threaten to make, unless the land in the city of Muskogee on which the plaintiff's drug store was located was in the Indian country.

[1] What, then, is the Indian country? Congress, by the Act of 1834, c. 161, 4 Stat. 729, declared that:

"All that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, and, also, that part of the United States east of the Mississippi river, and not within any state, to which the Indian title shall not have been extinguished, for the purposes of this act be taken and deemed to be the Indian country."

And it has been settled by repeated and uniform decisions of the Supreme Court, from Bates v. Clark, 95 U. S. 204, 208, 24 L. Ed. 471, wherein the rule was first clearly announced in 1877, to Clairmont v. United States, 225 U. S. 551, 558, 32 Sup. Ct. 787, 56 L. Ed. 1201, wherein it was reaffirmed in 1912, and it is conceded by counsel for the defendants that the criterion by which to determine whether a specified tract of land or location is in the Indian country, is that all the country described by the act of 1834 as Indian country remains Indian country as long as the Indians retain their original title, and, in the absence of a different provision by treaty, or by act of Congress, ceases to be Indian country whenever that title is extinguished. Dick v. United States, 208 U. S. 340, 359, 28 Sup. Ct. 399, 52 L. Ed. 520. The legislation and adjudications and their history, from which this criterion has been deduced, are recited in the opinions in the cases which have just been cited, and it would be a futile task to repeat them here.

Was the Indian title to the lands upon which the plaintiff's drug store stood and to the store upon it extinguished before the challenged search? The plaintiff alleges in his bill, the defendants do not deny in their statement, and their counsel concedes in his brief, that it was. How, then, may he escape the logical conclusion that the premises searched had ceased to be Indian country?

He argues that the land on which the drug store was situated is still Indian country, because there was a provision in the Creek Agreement (Act of March 1, 1901, 31 Stat. 861, 872, § 43) that:

"The United States agrees to maintain strict laws in said nation against the introduction, sale, barter, or giving away of liquors or intoxicants of any kind."

But the question here is not whether strict laws against the introduction into or the sale of liquors in the Creek Nation were to be or were maintained, but whether or not, by treaty or by act of Congress, the land on which this drug store was located, which tested by the criterion fixed by the Supreme Court was not Indian country, was made Indian country. The stipulation cited did not do so, or purport to do so, did not treat or mention the subject, and in any event it was nothing but a promise. It enacted nothing. Counsel maintains that this land is Indian country, because Congress has continued in force the tribal organization and government of the Creek Nation and maintained an Indian agent for the conduct of the business of that tribe, because many members of the tribe remain under the general guardianship of the government, and the latter holds $3,000,000 in trust for that tribe. But it would be flying in the face of a long line of uniform decisions of the Supreme Court to make these facts the criterion of Indian country and to hold this land to be Indian country which by the criterion established by the Supreme Court, the extinction of the original Indian title, is not Indian country, and this court declines so to do.

Counsel contends that this land should be held to be Indian country, and the owners and occupants of it to be subject to searches and seizures, without warrant or process, on account of the decisions and opinions in United States Express Co. v. Friedman, 191 Fed. 673, 112 C. C. A. 219; Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248; Mosier v. United States, 198 Fed. 54, 117 C. C. A. 162; United States v. Holliday, 3 Wall. 407, 18 L. Ed. 182; United States v. Forty-Three Gallons of Whisky, 93 U. S. 188, 23 L. Ed. 846; Dick v. United States, 208 U. S. 340, 352; 353, 28 Sup. Ct. 399, 52 L. Ed. 520. Before entering upon a review of these decisions, it may be well to call to mind a few salient facts which ought not to be disregarded, and the exact question at issue.

[2] The Act of June 28, 1898, c. 517, 30 Stat. 495, § 14, and the Creek Agreement (Act of March 1, 1901, 31 Stat. 861, 866, 867) §§ 11, 12, 13, 14, and 23, authorized the platting, appraisal, and sale of this land, and of all other land within the original corporate limits of the city of Muskogee and the conveyance of the title of the Creek Tribe, and of the United States thereto, to the respective purchasers thereof under these acts, free from every restriction, by deeds executed by the Principal Chief of the Creek Nation and approved by the Secretary of the Interior. The lands were platted, the lots were thus sold and so conveyed to the purchasers under these acts, a decade ago. Thereby the Indian title to them was extinguished, and under the rule that had then been established for more than 20 years they ceased to be Indian country, and their owners and occupants became exempt from searches and seizures under sections 2139 and 2140. In reliance upon these facts and this state of the law the purchasers bought these lands; they and their grantees have built upon them business blocks, stores, warehouses, residences, and public buildings, and have become a prosperous mercantile community of more than 25,000 inhabitants, of whom not 5 per cent. are Indians.

Now the question in this case is not whether the United States had or has the power to prohibit the introduction into or the sale upon these lands, or in the Indian Territory, or in Oklahoma or elsewhere, of intoxicating liquors; nor is it whether or not the United States has done so. It is not whether or not the United States had the power to continue these lands Indian country, or now has the power to make them such, and no discussion of these questions will be indulged in until it clearly appears that by treaty or act of Congress an attempt has been made so to do. The question now at issue is very narrow. It is simply: Has the United States, by treaty or by act of Congress, abrogated the established criterion of Indian country, or so modified it that these lands have continued or have again been made Indian country, and their owners and occupants subject to searches and seizures without warrant or process? They are citizens of the United States, and the fourth amendment to the Constitution reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Nothing less than a treaty or an act of Congress, which by express provision or plain implication has made the lands in this city of Muskogee Indian country, ought to be held to withdraw its citizens from the guaranty of this amendment.

[3] Counsel for the defendants claims that the judgment of this court in United States Express Co. v. Friedman, 191 Fed. 673, 112 C. C. A. 219, has conclusively answered the question before us. Let us see. That was an action for a writ of mandamus to compel the express company to transfer intoxicating liquors out of the state of Arkansas into that part of the state of Oklahoma which was formerly the Indian Territory, and this court held (1) that section 2139, Revised Statutes, was not rendered inapplicable to that territory by the formation of the Constitution and the admission of Oklahoma as a state (191 Fed. 679, 112 C. C. A. 219); (2) that an Indian allotment in that territory, while the title is held in trust by the government, is still Indian country by virtue of the provisions of the Act of January 30, 1897, 29 Stat. 506, c. 109 (191 Fed. 680, 112 C. C. A. 219); and (3) that the express company was not required to carry, but was prohibited from transporting, intoxicating liquors from other states into the part of the state of Oklahoma, which was formerly Indian Territory. At the time that decision was rendered, there were in that part of Oklahoma at least three classes of lands: (a) Lands to which the original Indian title had been extinguished by sales and conveyances of unrestricted titles to the purchasers; (b) lands to which the original Indian title had been extinguished by their allotment to members of the tribes in severalty, and the title to which was held in trust for the allottees by the United States; and (c) lands to which the Indian title had not been extinguished. There were therefore at that time lands that were Indian country in the part of Oklahoma which had formerly been the Indian Territory, and the question whether or not the lands there situated to which the Indian title had been extinguished by sales, and the title to which was not held in trust by the government, were Indian country was immaterial to the decision of the question in that case, because the introduction of liquor from another state into that part of Oklahoma was expressly prohibited by acts of Congress, whether the lands upon which it was introduced were or were not Indian country. Act of March 1, 1895, c. 145, 28 Stat. 693; Act of January 30, 1897, c. 109, 29 Stat. 506; Ex parte Webb, 225 U. S. 663, 681, 691, 32 Sup. Ct. 769, 56 L. Ed. 1248. Not only was that question immaterial in the Friedman Case, but it was neither mentioned, discussed, nor decided therein. Hence, whatever was said in the opinion in that case falls under the rules announced by Chief Justice Marshall that:

"An opinion in a particular case, founded on its special circumstances, is not applicable to cases under circumstances essentially different," Brooks v. Marbury, 24 U. S. (11 Wheat.) 78, 90 (6 L. Ed. 423), and "General expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." Cohens v. Virginia, 6 Wheat. 264, 393, 5 L. Ed. 257; King v. Pomeroy, 121 Fed. 287, 294, 58 C. C. A.

209, 216; Traer v. Fowler, 144 Fed. 810, 817, 75 C. C. A. 540, 547; Mason City & Ft. Dodge Ry. Co. v. Wolf, 148 Fed. 961, 968, 78 C. C. A. 589, 596.

But while there is no decision in the Friedman Case of the question whether or not lands formerly in the Indian country, to which the unrestricted title has vested in the grantees under authorized sales, are Indian country, yet the Act of 1897, 29 Stat. 506, cited in the opinion in that case, and the opinion itself, are very persuasive that they are not. The general rule was that lands to which the original Indian title was extinguished ceased to be Indian country. When the act of 1897 was passed, sales of lands in the Indian country and the conveyance to white purchasers of unrestricted titles to them and allotments of other lands in the Indian country to the members of the tribes in severalty were contemplated and progressing. Such sales and such allotments alike extinguished the original title. The Congress provided in the act of 1897, and the court held in the Friedman Case, that Indian country should "include any Indian allotment while the title to the same shall be held in trust by the government," but the Congress did not provide, nor did the court hold, that Indian country should include lands to which the Indian title had been or should be extinguished by sales and the vesting of the unrestricted title in the purchasers and their grantees. The express inclusion of the former is the exclusion of the latter under a familiar rule, and the natural and rational deduction from the act and the decision is that the latter lands are not Indian country.

In Ex parte Webb, 225 U. S. 663, 681, 691, 32 Sup. Ct. 769, 56 L. Ed. 1248, Webb was indicted and convicted of introducing intoxicating liquors into the Indian country, and he made an application to the Supreme Court for a writ of habeas corpus. The parties admitted that the liquors were shipped by the petitioner from Joplin, Mo., to and received by Webb within the city of Vinita, in Oklahoma, and that the place where the liquor was received was a part of the original town of Vinita, in the Indian Territory. As the case arose on a petition for a writ of habeas corpus, the only question before the Supreme Court, and the only question which it considered or decided, was the jurisdiction of the court below; and it held that that court had jurisdiction, because the shipment of the liquor from one state into another was in violation of that part of the Act of March 1, 1895, 28 Stat. 693, which, under the commerce clause of the Constitution, prohibited the introduction of intoxicating liquors from another state into that part of the state of Oklahoma which was formerly the Indian Territory. 225 U. S. 681, 691, 32 Sup. Ct. 769, 56 L. Ed. 1248. That court expressly decided that it was unnecessary for it to decide (225 U. S. 676, 32 Sup. Ct. 769, 56 L. Ed. 1248), and it neither considered nor decided, whether or not the place where the liquor was received was Indian country, so that the decision and opinion in that case fall under the same rules that govern the opinion and decision in the Friedman Case, and are neither decisive nor persuasive upon the question at issue.

In Mosier v. United States, 198 Fed. 54, 117 C. C. A. 162, this court sustained the conviction of the defendant of the offense of selling liq-

uor to an Indian who was "a ward of the government under charge of an Indian superintendent or agent," in violation of the prohibition of such sales to such an Indian, found in the Act of January 30, 1907, 29 Stat. 506; but there is nothing in the decision or opinion of that case concerning the limits of the Indian country.

In United States v. Holliday and United States v. Haas, 3 Wall. 407, 416, 18 L. Ed. 182, the defendants were indicted for selling intoxicating liquor to Indians in charge of Indian agents appointed by the United States, in violation of the Act of February 13, 1862, c. 24, 12 Stat. 339, which declared that if any person shall sell any spirituous liquor "to any Indian under the charge of any Indian superintendent or Indian agent appointed by the United States," he shall, "on conviction thereof," be fined and imprisoned, and it was conceded that the liquor was sold outside the Indian country. The court sustained the conviction, on the ground that the denunciation of the statute was not limited to sales in the Indian country, but by its express terms extended to sales to Indians in charge of an Indian agent, whether within or without that country. No phase of the question what was or is Indian country arose, was discussed, or determined therein.

The case of United States v. Forty-Three Gallons of Whisky, 93 U. S. 188, 193, 197, 198 (23 L. Ed. 846), was founded on a libel of information, which charged that the whisky was introduced into territory ceded to the United States by the treaty with the Red Lake and Pembina bands of Chippewa Indians, concluded October 6, 1863, and proclaimed May 5, 1864. Article 7 of that treaty read in this way:

"The laws of the United States now in force, or that may hereafter be enacted, prohibiting the introduction and sale of spirituous liquors in the Indian country, shall be in full force and effect throughout the country hereby ceded, until otherwise directed by Congress or the President of the United States." Oct. 2, 1863, 13 Stat. 667.

The court held that by virtue of this article of the treaty the prohibition of the introduction of liquor into the Indian country and the provisions authorizing the search for and the seizure of it in the Indian country, found in section 20 of the act of 1834, as amended by Act March 15, 1864, c. 33, 13 Stat. 29, had been extended over and made applicable to the ceded territory. 93 U. S. 193, 197, 198, 23 L. Ed. 846. But the decision and opinion have no relevancy here, because no treaty or act of Congress has been discovered which provides that the laws in force in the Indian country within what was the Indian Territory shall be extended over and in force on the lands outside the Indian country, the original Indian title to which has been extinguished and the unrestricted title to which has been vested in grantees of the Indian nations by authorized sales and conveyances.

The case of Dick v. United States, 208 U. S. 340, 351, 352, 353, 28 Sup. Ct. 399, 52 L. Ed. 520, is of the same nature. In that case Dick was indicted for introducing liquor into the village of Culdesac, which was located on the land which had been ceded to the United States by an agreement with the Nez Perces Tribe of Indians, set forth in the Act of August 15, 1894, c. 290, 28 Stat. 286, 326, 327,

and the original Indian title to which had been extinguished. Article 9 of that agreement provided:

"It is further agreed that the lands by this agreement ceded, those retained, and those allotted to the said Nez Perces Indians shall be subject for a period of twenty-five years to all the laws of the United States prohibiting the introduction of intoxicants into Indian country."

The court held that by virtue of that stipulation "the lands ceded by the Nez Perces Indians and those retained, as well as those allotted to the Indians (which embraced all the lands in the original reservation), were subject, for the limited period of 25 years, to all federal laws prohibiting the introduction of intoxicants into Indian country," and on that ground it sustained the conviction. But it also declared that, in the absence of that or some equivalent treaty or act of Congress, the extinguishment of the original Indian title would have taken the land out of the Indian country, and would have exempted it from the provisions of sections 2139 and 2140, Revised Statutes.

"If this case," said the court, "depended alone upon the federal liquor statute forbidding the introduction of intoxicating drinks into the Indian country, we should feel obliged to adjudge that the trial court erred in not directing a verdict for the defendant; for that statute, when enacted, did not intend by the words 'Indian country' to embrace any body of territory in which, at the time, the Indian title had been extinguished, and over which and over the inhabitants of which (as was the case of Culdesac) the jurisdiction of the state, for all purposes of government, was full and complete. Bates v. Clark, 95 U. S. 204 [24 L. Ed. 471]; Ex parte Crow Dog, 109 U. S. 556, 561 [3 Sup. Ct. 396, 27 L. Ed. 1030]."

The acts of Congress and authorities cited in justification of the search made and the searches threatened by the defendants have now been reviewed. The acts of Congress and treaties referred to in the opinions in the cases cited have been carefully examined and this is the state of this case:

The defendants have no authority, under sections 2139 and 2140, to search premises outside the Indian country without warrant or process. Lands once Indian country remain such as long as the Indians retain their original title, and, in the absence of a different provision by treaty, or by act of Congress, cease to be Indian country whenever that title is extinguished. The original Indian title to the land on which the plaintiff's drug store stands had been extinguished many years before the search made by the defendants. No provision of any treaty or act of Congress to the effect that the land on which this drug store stands, or the lands within the original corporate limits of the city of Muskogee, should not cease to be Indian country on the extinguishment of the Indian title thereto, or to the effect that the provisions of section 2140, relative to searches for intoxicating liquor in the Indian country, should continue or be in force on these lands after the unrestricted title thereto had vested in purchasers and grantees under authorized sales and conveyances, has been cited, nor has a diligent search disclosed any. In 1897 (29 Stat. 506) the Congress expressly declared that Indian country should include any Indian allotment while the title to the same should be

held by the government, but it did not provide that Indian country should include lands formerly within it to which the unrestricted title had been vested in purchasers and their grantees by authorized sales and conveyances, and it thereby impliedly declared that it should not include them. In 1898 the Attorney General of the United States was of the opinion that the lands in town sites authorized by the acts of Congress which have been cited were not Indian country, and that the federal liquor laws relative to the introduction of liquor into the Indian country and the search for it therein were not longer applicable to such lands. 22 Opinions of the Attorneys General, 232, 234. In Dick v. United States, 208 U. S. 353, 28 Sup. Ct. 399, 52 L. Ed. 520, the Supreme Court, as we have already seen, declared that in such a case as this in hand those laws were inapplicable. And in Clairmont v. United States, 225 U. S. 551, 558, 559, 32 Sup. Ct. 787. 56 L. Ed. 1201. the last decision on the question which has been found, the Supreme Court decided that lands, the original Indian title to which had been extinguished without any provision of a treaty or act of Congress limiting the effect of that extinguishment, were not longer Indian country, were withdrawn from the effect of the federal liquor laws relative to the introduction of liquor into the Indian country, the search for and seizure thereof, and that one who brought liquor upon such lands could not be lawfully convicted of introducing it into the Indian country. And the unavoidable conclusion is that the drug store of the plaintiff and the lands within the original corporate limits of the city of Muskogee, the original Indian titles to which have been extinguished by authorized sales and conveyances, are not Indian country; that neither the chief special officer of the Indian service nor any Indian superintendent, or Indian agent or subagent, or any of his deputies, has any authority, without warrant or process, to search the stores, shops, residences, or other public buildings thereon, owned or occupied by citizens of the United States, for intoxicating liquors, either under sections 2139 and 2140 of the Revised Statutes, or under any other act of Congress; and that the search and the threats charged in the bill in this suit were without justification.

[4] Counsel for the defendants suggest that the bill fails to disclose such irreparable injury to the plaintiff as will sustain the jurisdiction of a court of equity to issue an injunction. But continuing trespasses upon real estate and threats to continue and repeat them invoke the jurisdiction of the chancellor, because the only remedy at law, constantly recurring actions for damages, are more vexatious and expensive than effective, and they furnish no adequate remedy (United States Freehold, Land & Emigration Co. v. Gallegos, 89 Fed. 769, 773, 32 C. C. A. 470, 474; Miller & Lux v. Rickey [C. C.] 127 Fed. 573, 586; Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 945, 52 C. C. A. 559, 565; The Salton Sea Cases, 172 Fed. 792. 800, 97 C. C. A. 214, 222), and the search, the threat to repeat it at will, and the insistent claim of the right to do so, which the bill and the statement for the defendants present, disclose a compelling equity which gives ample jurisdiction to the court below to grant the

injunction sought. Deere & Webber Co. v. Dowagiac Mfg. Co., 153 Fed. 177, 181, 82 C. C. A. 351, 353, and cases there cited.

The order denying the motion for the preliminary injunction is accordingly reversed, and the case is remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.