### ARCHARD v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   February 5, 1914.)

No. 3961.

*(Syllabus by the Court.)*

1. INDIANS (§ 38*)—INTRODUCING LIQUOR INTO INDIAN COUNTRY—SUFFI-
CIENCY OF EVIDENCE.

The testimony upon the charge of introducing liquor into a county of
Oklahoma which was formerly a part of the Indian Territory (Act March
1, 1895, c. 145, 28 Stat. 693) examined, and *held* sufficient to sustain a con-
viction.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec.
Dig. § 38.*]

2. INDIANS (§ 35*)—INTRODUCING LIQUOR INTO INDIAN COUNTRY—ELEMENTS
OF OFFENSE.

Where, in a prosecution for introducing liquor into a county of Okla-
homa which was formerly a part of Indian Territory, the proofs showed
that the plaintiff in error drove a buggy which contained, and which he
knew to contain, intoxicating liquors, from the state of Texas into the
portion of Oklahoma which was formerly Indian Territory, he is guilty
of introducing such liquor, and this whether his purpose in so transport-
ing it was to aid the owner of the liquor, who was in the buggy with him,
or not, and this also whether he had a financial interest in such liquor
or not.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62; Dec.
Dig. § 35.*]

In Error to the District Court of the United States for the Eastern
District of Oklahoma; Ralph E. Campbell, Judge.

John Archard was convicted of introducing liquor into what was
formerly a part of the Indian Territory, and brings error.   Affirmed.

Guy H. Sigler, of Ardmore, Okl., for plaintiff in error.

C. C. Herndon, Asst. U. S. Atty.; of Muskogee, Okl. (D. H. Line-
baugh, U. S. Atty., of Atoka, Okl., and Frank Lee, Asst. U. S. Atty.,
of Shawnee, Okl., on the brief), for the United States.

Before SANBORN and SMITH, Circuit Judges, and POPE, Dis-
trict Judge.

POPE, District Judge.   Archard was prosecuted in the trial court
for introducing liquor into a county of Oklahoma which was formerly
a part of the Indian Territory.   The case made by the testimony is
briefly stated.   On Saturday, May 25, 1912, one Bill Willis, a shoe-
maker, and the defendant Archard, each living at Madill, Okl., started
from Madill at 4:30 in the morning for a trip by buggy to Denison,
Tex., a distance overland of about 35 miles.   The buggy was hired by
Willis at a livery stable owned by Archard's brother, and Archard was
sent by his brother as driver and as caretaker of the team.   There was
a railroad running direct from Madill to Denison.   Reaching Denison
about 11 in the morning, Archard put up his team and went to call on
some friends.   Willis meanwhile obtained from one of the railroads at
Denison a consignment of whisky there held and addressed to him,
and, by some method not disclosed by the evidence, this whisky reached

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the buggy in which Archard and himself had come. They started on the return trip to Madill about 3:30 in the afternoon of the same day. They crossed the Red river, which is at that point the boundary line between Texas and that part of Oklahoma formerly Indian Territory, at a place called Thompson's Ferry, and proceeding farther on their journey reached Kinston, a settlement some 10 or 12 miles from the crossing, between 1:30 and 2:00 o'clock Sunday morning. Here the city marshal, Thompson by name, who had been advised of their movements and who was awaiting their arrival at a house on the roadside, commanded them to halt. At this particular moment Archard, although seated on the right-hand side of the buggy, was not driving, having, it seems, gone to sleep about two miles out of Kinston. The buggy was headed west; Archard was on the right-hand or north side thereof; Willis on the left-hand or south side. The officer approached the vehicle from and upon the latter or south side. As he did so, Archard holding a pistol across the lap of Willis fired upon the officer. The team instead of being halted was thereupon driven more rapidly westward and as it disappeared a further shot was fired from it. The officer, who was now behind the buggy, also fired, and Willis was killed. The buggy, however, continued westward for about half a mile but after about 15 minutes Archard returned with it, reporting that Willis was dead. Being asked "where the whisky was," he replied it was "there in the buggy." An examination revealed 27 quart bottles of whisky loose on the floor of the buggy, some of them without wrappings and on the front part of such floor. Archard was intoxicated.

[1] It is said first that this carrying of the whisky into Oklahoma was not contrary to any law. But the introduction was admittedly from Texas into a county of Oklahoma which was formerly a part of the Indian Territory and thus within the Act of March 1, 1895, 28 Stat. 693. United States v. Wright, 229 U. S. 226, 236, 33 Sup. Ct. 630, 57 L. Ed. 1160; Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248. There is nothing in Clairmont v. U. S., 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201, or Evans v. Victor, 204 Fed. 361, 122 C. C. A. 531, contrary to this.

But it is said, passing this, that defendant had nothing to do with the matter, being simply a hired driver connected neither by interest nor by purpose with the alleged introduction and without knowledge of the presence of the liquor in the buggy. The undisputed facts of the case left a very restricted margin of inquiry. There was confessedly an introduction. The only question left was as to whether it involved Archard. He was undoubtedly connected as a physical agency, for he drove the buggy which carried the whisky across the state line. He thus physically introduced it. Did he do so knowingly? If not, he simply drove a buggy from one state to another, and that, of course, was no violation of law. We are of opinion that upon this issue of knowledge there was sufficient evidence to sustain the finding. The enterprise was an unusual one: A long overland trip with a hired team when the speedy and presumably cheaper facilities of a direct railroad route were available; a journey beginning and ending in the dead of night and thus affording a cloak for a secret exit from and entrance into the prohibited territory. There was also the improbability of a load being

placed in the buggy which defendant had in his charge, without his knowing it; the improbability of his traveling ten hours over a country road without hearing the rattling of the bottles; the improbability of not seeing such bottles as they lay scattered about him on the floor, some of them in the front part of the buggy; the fact that at the conclusion of this ten-hour trip he was intoxicated, indicating that he had not only been transporting but using whisky on the way; his resistance of the officer and his firing upon him; his flight; his answer to the question as to where the whisky was, that it was "in the buggy"—all of these circumstances taken together made, in our judgment, a case for the prosecution on the issue of knowledge. We, of course, do not overlook the fact that the defendant testified in denial of much of this. But the jury had the right to believe the witnesses for the prosecution rather than him. That they did so affords no ground of legal exception.

[2] There remain to be dealt with two criticisms upon the charge of the court. One is that the court should have charged, as requested, that there could be no conviction unless what was done by defendant was "for the purpose of aiding, abetting or assisting the said Bill Willis in bringing whisky" into the prohibited territory. But this was no necessary element of the offense. If Archard knew that his buggy was loaded with whisky and so knowing drove it across the line, he was guilty of introducing it. It was immaterial whether such act resulted from a purpose to aid Willis in the matter or a desire to earn for his brother the hire of the team or from some other cause. The act knowingly done itself speaks and independent of the cause sought to be aided constituted a violation of law. Equally untenable is the second contention, embodied in one of the requests to charge, that an interest in the whisky introduced was essential to guilt. From the standpoint of the law and its purposes it was immaterial whether Archard was introducing his own liquor or that of somebody else. It is sufficient that he introduced.

The judgment is affirmed.