UNITED STATES v. ONE FORD FIVE-PASSENGER AUTOMOBILE.

(District Court, E. D. Oklahoma.   April 15, 1919.)

No. 2836.

INDIANS &=35—INTRODUCING LIQUOR INTO INDIAN COUNTRY—FORFEITURE OF
    VEHICLE USED.

   Under Rev. St. § 2140, Act March 1, 1907 (Comp. St. §§ 4141, 4142), and
supplementary acts, a special enforcement officer of the Indian Bureau
*held* to have authority to seize and subject to forfeiture proceedings an
automobile containing liquor which he has reason to suspect is about to
be introduced into the Indian country or among Indians, where its in-
troduction is prohibited by law or treaty, although at the time of seizure
it is not within the Indian country.

At Law.   Proceeding by the United States for the forfeiture of one
five-passenger Ford automobile.   On demurrer to portion of interplea
of T. A. Harwell.   Demurrer sustained.

Cliff V. Peery, Asst. U. S. Atty., of Muskogee, Okl., for the United
States.

E. Hamilton, of Chickasha, Okl.,   for respondent.

WILLIAMS, District Judge.   Respondent, T. A. Harwell, by way
of intervention, admits that—

   "As alleged in said libel he was arrested on the 26th day of March, 1918,
by T. E. Brents, special enforcement officer, and that said automobile is now
in the hands of Dick Worley, deputy United States marshal, at Duncan, Okl."

Further answering, he says that said automobile is not subject to
seizure under the laws of the United States, and that said arrest and
seizure were made by said T. E. Brents, special enforcement officer,
in that part of the Eastern district of Oklahoma which, prior to the ad-
mission of the state into the Union, was in the county of Comanche,
territory of Oklahoma, and prior to the 1st day of July, 1910, in the
Western district of Oklahoma, and that said arrest and seizure was
made west of the Indian meridian line, and not in that part of the
Eastern district of Oklahoma which was formerly the Indian Terri-
tory.   Then follows the prayer that the libelant take nothing and that
the libel be dismissed.

In the libel information it is averred:

   "That at the time of the seizure of said above described property by said
officer, * * * said property was in the possession of and being used by
T. A. Harwell * * * for the purpose of introducing, transporting, and
conveying from without the state of Oklahoma, into the eastern part of the
state of Oklahoma, formerly Indian Territory, spirituous, vinous, fermented,
and intoxicating liquor, in violation of section 8 of the act of Congress of
March 1, 1895, and other acts of Congress in such cases made and provided;
that the said place where the said property was seized by said officers is and
was at the time of the seizure within the Eastern judicial district of the state
of Oklahoma; and that the introduction and transportation of liquor into said
district was at the time of the seizure of said above described property pro-
hibited by federal statute."

In view of the record in this hearing on the intervention, these allegations are to be taken as true.

Section 2140, Revised Statutes of the United States, as amended by Act March 1, 1907, c. 2285, 34 Stat. 1017 (Compiled Statutes, § 4141), is as follows:

"If any superintendent of Indian affairs, Indian agent, or subagent, or commanding officer of a military·post, has reason to suspect or is informed that ·any white person or Indian is about to introduce or has introduced any spirituous liquor or wine into the Indian country in violation of law, such superintendent, agent, subagent, or commanding officer, may cause the boats, stores, packages, wagons, sleds, and places of deposit of such person to be searched, and if any such liquor is found therein, the same, together with the boats, teams, wagons, and sleds used in conveying the same, and also the goods, packages, and peltries of such person, shall be seized and delivered to the proper officer, and shall be proceeded against by libel in the proper court, and forfeited, one-half to the informer and the other half to the use of the United States; and if such person be a trader, his license shall be revoked and his bond put in suit. It shall moreover be the duty of any person in the service of the United States, or of any Indian, to take and destroy any ardent spirits or wine found in the Indian country, except such as may be introduced therein by the War Department. In all cases arising under this and the preceding section Indians shall be competent witnesses."

The Congress by Act March 1, 1907 (34 Stat. 1017), in order to enable the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, to take action to "suppress the traffic of intoxicating liquors among Indians," appropriated $25,000 therefor, and provided that:

" * * * The powers conferred by section twenty-one hundred and forty of the Revised Statutes upon Indian agents, and subagents, and commanding officers of military posts are hereby conferred upon the special agent of the Indian Bureau for the suppression of the liquor traffic among Indians and in the Indian country and duly authorized deputies working under his supervision." Comp. St. § 4142.

By acts of April 4, 1910 (36 Stat. 271, c. 140), and March 3, 1911 (36 Stat. 1058, c. 210), additional appropriations were made "for the suppression of the liquor traffic among Indians." By Act Aug. 24, 1912 (37 Stat. 518, c. 388), the Congress made an appropriation "for the suppression of the liquor traffic among Indians," and provided:

"That the powers conferred by section seven hundred eighty-eight of the Revised Statutes upon marshals and their deputies are hereby conferred upon the chief special officer for the *suppression of the liquor traffic among Indians* [italics mine], and duly authorized officers working under his supervision whose appointments are made or affirmed by the Commissioner of Indian Affairs or the Secretary of the Interior."

Section 788, Revised Statutes (Comp. St. § 1312), is as follows:

"The marshals and their deputies shall have, in each state, the same powers, in executing the laws of the United States, as the sheriffs and their deputies in such state may have, by law, in executing the laws thereof."

By Act May 18, 1916, c. 125, 39 Stat. 123, and Act March 2, 1917, appropriations were made "for the suppression of the liquor traffic in intoxicating liquors among Indians." The following excerpt is here set out from said act of March 2, 1917 (39 Stat. 970, c. 146):

" * * * For the suppression of the traffic in intoxicating liquors among Indians, $150,000: Provided, that automobiles or any other vehicles or conveyances used in introducing, or *attempting to introduce*, intoxicants into the Indian country, or *where the introduction is prohibited by treaty or federal statute*, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section twenty-one hundred and forty of the Revised Statutes of the United States." (Italics mine.)

Attention is directed to the language used in the act of March 1, 1907, to wit, "for the suppression of the liquor traffic among Indians and in the Indian country," and each appropriation made thereafter carries the language "for suppression of the liquor traffic among Indians."

Obviously it was contemplated that Indians, as termed in said provisions, would live in territory without what was technically termed "Indian country." Such a condition exists in the Eastern district of Oklahoma. Parts of said district come within such term "Indian country"; some does not. It appears to have been the legislative intent that the special agent of the Indian Bureau and his duly authorized deputies, working under his supervision, should have the authority to suppress such traffic among Indians, whether within the "Indian country" or without, provided it was in territory where its introduction was prohibited by treaty or federal law. Under these various federal statutes such enforcement officer has the authority to exercise the powers of the marshal and his deputies in executing such laws, and also that of sheriffs and their deputies in this state. See U. S. v. Birdsall, 233 U. S. 223, 34 Sup. Ct. 512, 58 L. Ed. 930; U. S. v. One Seven-Passenger Paige Car, 259 Fed. 641; U. S. v. One Buick Roadster Automobile (D. C.) 244 Fed. 961.

As to the contention that whilst in the Eastern district, but without what was formerly the Indian Territory, the car was seized in the possession of the respondent, with which he was "attempting to" or "about to introduce," transport and convey from without the state of Oklahoma into that part of the Eastern district of Oklahoma which was formerly the Indian Territory, spirituous, vinous, fermented, and intoxicating liquor, in violation of section 8 of the act of Congress of March 1, 1895 (28 Stat. 697, c. 145 [Comp. St. § 4136b]), and other acts of Congress in such cases made and provided, and it was, therefore, not within the power of such officer to make such seizure. Section 2140, supra, as amended and supplemented by the various acts hereinbefore referred to, in effect provides that, if any duly authorized officer "has reason to suspect or is informed that any * * * person * * * is *about to introduce*," or "*attempting to introduce*," or "has introduced any spirituous liquor or wine into Indian country or where the introduction is prohibited by treaty or federal statute, whether used by the owner thereof or other person, such automobile shall be seized and delivered to the proper officer and be proceeded against by libel. * * *" Under this record it is to be taken as admitted that such intoxicating liquors were "about to be introduced," or that respondent was by means of said automobile "attempting to introduce" such liquors, into what was formerly the Indian Territory, "where the introduction is prohibited by treaty or federal stat-

ute." Under this condition the said Brents, as special enforcement officer for the Indian Bureau, was authorized to make the seizure.

In Danciger et al. v. Atchison, Topeka & S. F. Ry. Co. (Mo. App.) 179 S. W. 800,[1] the court, after referring to said act of March 1, 1907 and setting out at length said section 2140, Revised Statutes, said:

"Now, the officer who seized the liquor had a proper and legal commission as a deputy special agent, and was, in fact, such officer; and under the two statutes above mentioned, if he had 'reason to suspect' that any person is 'about to introduce' any liquor into the Indian country in violation of law, he could cause the store or place of deposit to be searched, and, if liquor was found therein, the same could be seized, etc. This he could do summarily and without warrant or process. He was not required to obtain a writ to authorize him to do so. In Wells v. Maine Steamship Co., 29 Fed. Cas. 669, No. 17,401, the seizure was without process by an officer that should have had it, but the carrier was held not liable.

"But plaintiffs say the station was outside of the Indian country, and therefore the officer had no authority to seize the liquor, except in such territory, and that, as he had no authority to act outside of his territory, he was a mere trespasser like any other, and the defendant is liable the same as if it had permitted an ordinary trespasser to take it, and a number of cases are cited in support of the contention that he had no such authority outside of Indian country. In our opinion, they do not decide the precise question here presented. In Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471, the plaintiffs had liquor for sale in their store, and the defendants, a captain and lieutenant in the United States army, seized it. They were sued by the merchants, and defended, not upon the ground that the liquor was about to be introduced into Indian country, but on the ground that the place where they found and seized it was Indian country; i. e., that it had already been introduced, and that they had a right to seize it. But the court held that the place was not Indian country; consequently the plaintiffs had not introduced any liquor. They were not charged with attempting or being about to introduce liquor into forbidden territory. And, since the store where the liquor was kept for sale was not in Indian country, there could have been no foundation for any claim that they were about to introduce it. The court, at page 209 of 95 U. S. (24 L. Ed. 471), says: 'The plaintiffs below violated no law in having the whisky for sale at the place where it was seized.'

"The case of Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201, was upon an indictment for introducing liquor into Indian country. Of course, if the place where the liquor was seized was not forbidden territory, then the defendant could not be convicted, since he had not introduced it. The court in that case preserves the distinction we are here dealing with, since it says on page 555 of 225 U. S., on page 787 of 32 Sup. Ct. (56 L. Ed. 1201): 'The indictment charged that the plaintiff in error "did then and there wrongfully and unlawfully introduce" a quantity of intoxicating liquor into, etc. * * * The offense alleged was the introduction of the liquor into the reservation, and not "attempting to introduce."'

"Again, at page 560 of 225 U. S., on page 790 of 32 Sup. Ct. (56 L. Ed. 1201), the court say: 'To repeat, the plaintiff in error was not charged with "attempting to introduce" the liquor into Indian country, but with the actual introduction. If having the liquor in his possession on the train on this right of way did not constitute such introduction, it is immaterial, so far as the charge is concerned, whether or not he intended to take it elsewhere.'

"In Evans v. Victor, 204 Fed. 361, 122 C. C. A. 531, defendants, who were government officers, searched plaintiff's drug store in Muskogee, and plaintiff brought injunction to prevent further searches. The defense was that Muskogee was in Indian country, and that defendants had reasonable grounds to believe that plaintiff kept liquors in his store, and that they had a right

[1] This case was certified to Supreme Court of Missouri, whose opinion is reported in 212 S. W. 5.

to search for them. Here again there was no claim that the storekeeper was about to introduce liquor into Indian country, but that his keeping it in his store constituted an introduction already effected. The court held that, as Muskogee was not in Indian country, of course, the keeping of liquors for sale in a store in that city was not the introduction of them into such forbidden territory. The opinion is dealing only with the facts before it, and as the opinion itself says, on page 367 of 204 Fed., on page 537 of 122 C. C. A., quoting from Chief Justice Marshall: 'An opinion in a particular case, founded on its special circumstances, is not applicable to cases * * * essentially different.'

"The court, in the remarks made in the Victor Case, had in mind only the facts before it. With reference to those facts, the court could rightfully say that the officers were without authority to act outside of the Indian country. That was true when applied to the facts of that case, and besides, was conceded to be so by the defendants. 204 Fed. 364, 122 C. C. A. 531. So that we have been cited to no case holding that, where the liquor is stored near the line of forbidden territory, consigned to persons who live and operate therein, as the officer testified they did, and by reason of his experience with them before and his knowledge of their operations, he had reason to suspect that the liquor was about to be introduced into the forbidden district, he has no authority to seize, but is powerless to move until after the intending lawbreaker, under cover of the night or some other favorable opportunity, has succeeded in getting it into the district and scattering it among his thirsty patrons. If the statute means that the officer cannot seize until after it is in forbidden territory, then what is the use or meaning of words 'is about to introduce' in the statute? If he can only act within the forbidden territory, then he can never seize any liquor that is 'about to be introduced,' since then it has already been introduced. The officer in this case was not appointed with authority limited to a particular district, like a constable to a township or a sheriff to a county. He was appointed under the laws of the United States, the government of which extends over all the states as to matters within its jurisdiction. We do not mean to say that an officer could go anywhere in the United States and search for and seize liquor upon the pretext that it was about to be introduced into Indian country, but certainly, where a large consignment of it is sent to a point on the edge of a forbidden district, consigned to parties living and operating therein, then either the officer has a right to seize it if he suspects it is 'about to be introduced,' or else these words in the statute mean nothing whatever."

Fehrenbach Wine & Liquor Co. v. Atchison, T. & S. F. Ry. Co., 182 Mo. App. 1, 167 S. W. 631, is relied upon by respondent. This case is referred to and distinguished in Danciger v. Atchison, Topeka & S. F. Ry. Co., supra.

United States v. The Cora, 1 Dak. 1, 46 N. W. 503, is also relied upon by respondent. This was decided by the Supreme Court of the territory of Dakota long before the act of March 1, 1907, and subsequent legislation. If sound as an authority, it has no application here, on account of the subsequent amendments and supplemental legislation.

The demurrer to interpleader's amended answer will be sustained, and respondent's demurrer to first amended libel will be overruled.