## TOWNSEND v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1920.)

No. 5424.

1. **Indians ⟐⟑10—Indian country dependent on title to land.**
   The criterion to determine whether a particular place has ceased to be Indian country is whether the Indian title to the land had or had not been extinguished.

2. **Indians ⟐⟑10—Statute which extinguishes Indian title.**
   The Indian title to land is extinguished when the United States has made a grant of the title and right of possession, either expressly or as the necessary result of the statute, so that the jurisdiction of the state is complete.

3. **Indians ⟐⟑10—Grant of right of way in fee extinguishes Indian title.**
   In case of the grant of a right of way through the Indian country, when title to the fee has been granted and the Indians' right of possession has been surrendered or otherwise extinguished, the Indian title ceases.

4. **Indians ⟐⟑10—Indian title not divested by establishment of highway.**
   Under Osage Allotment Act, § 10, providing that "public highways or roads two rods in width, being one rod on each side of all section lines in the Osage Indian reservation, may be established without any compensation therefor." Wilson's Rev. & Ann. St. Okl. 1903, § 6072, then in force, declaring all section lines public highways, which was continued in force by the Constitution of Oklahoma, operated as an acceptance of the grant and established highways on all section lines within the reservation, but under the common law, which is in force in Oklahoma, did not extinguish the Indian title to the soil, which therefore remains a part of the Indian country.

5. **Indians ⟐⟑35—Automobile not forfeitable as used to introduce liquor.**
   That a bottle of champagne was found in an automobile being used on a pleasure trip of four miles into Indian country, and which had turned around and was returning on the highway when stopped, *held* not sufficient evidence to establish that it was being used to introduce liquor into the Indian country and was subject to forfeiture, under Act March 2, 1917, c. 146, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4141a).

In Error to the District Court of the United States for the Western District of Oklahoma; J. W. Woodrough, Judge.

Information by the United States against one automobile; Edna Townsend, intervener, claimant. From a judgment of forfeiture, claimant brings error. Reversed.

⟐⟑For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

G. K. Sutherland, of Hominy, Okl. (S. H. Harris and J. I. Howard, both of Oklahoma City, Okl., and Paul G. Darrough, of Hugo, Okl., on the brief), for plaintiff in error.

Frank E. Ransdell, Asst. U. S. Atty., of Oklahoma City, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., on the brief), for the United States.

Before SANBORN, Circuit Judge, and LEWIS and MUNGER, District Judges.

MUNGER, District Judge. From a judgment of forfeiture and order of sale of an automobile this writ of error is prosecuted. An information was filed against this vehicle, charging that it was used by Dewey Bales and John Ke-mo-hah in introducing intoxicating liquors into the Indian country and upon two allotments of Osage Indians, in Osage county, Okl. The plaintiff in error intervened in the suit, alleging that she owned the automobile, that she had loaned it that day to her brother, John Ke-mo-hah, to drive about the town of Hominy, Okl., and she denied that it was used in introducing intoxicating liquors into the Indian country and on the allotments, and alleged that it was seized on the public highway in Osage county.

The case was tried by the court on a written agreement and stipulation of facts, from which it appeared that on June 1, 1918, an officer of the Indian Bureau seized and searched this automobile and found in it a quart of champagne, which had been transported by means of the automobile from some other place in the county not on these allotments by John Ke-mo-hah, who had charge of the car at the time. The officer had followed this automobile for about four miles from the town of Hominy, and it had turned around and was starting back in an easterly direction, when it was stopped and searched. An Osage Indian had a homestead allotment embracing the northwest quarter of the northwest quarter of section 24, and another had a homestead allotment embracing the southwest quarter of the southwest quarter of section 13, which were held under trust patents by them; the title still being held in trust by the United States. The section line between these two tracts of land runs east and west, and at the time the automobile was seized and searched it was on a 33-foot highway along this section line between these two allotments, and it had not been off of the section line highway. The intervener owned the automobile, and had loaned it to her brother to drive in and about the town of Hominy; but she did not own the champagne, or know of or consent to its transportation.

The errors assigned challenge the sufficiency of the facts stipulated to support the judgment, and that question is reviewable, even though the trial was to the court, as the agreement for such mode of trial was in writing. Lehnen v. Dickson, 148 U. S. 71, 73, 13 Sup. Ct. 481, 37 L. Ed. 373; Fellman v. Royal Ins. Co., 185 Fed. 689, 690, 107 C. C. A. 637. The question presented on the facts is whether the automobile was used in introducing intoxicating liquor into the Indian country. By section 1 of the Act of Congress of January 30, 1897 (29 Stat. 506; section 4137 U. S. Comp. Stats. Ann. 1916), it

is made an offense for any person to introduce any vinous or intoxicating liquor into the Indian country, which term includes any Indian allotment while the title thereto is held in trust by the government. By section 2140, Revised Statutes (section 4141, U. S. Comp. Stats. Ann. 1916), provision is made for the seizure and forfeiture under certain circumstances of the boats, teams, wagons, and sleds used in conveying any spirituous liquor or wine into the Indian country in violation of law. By an Act of Congress of March 2, 1917 (39 Stat. 969, 970; section 4141a U. S. Comp. Stats. 1918, Comp. St. Ann. Supp. 1919):

"Automobiles or any other vehicles or conveyances used in introducing, or attempting to introduce, intoxicants into the Indian country, or where the introduction is prohibited by treaty or federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in section twenty-one hundred and forty of the Revised Statutes of the United States."

By another provision of the Act of Congress of May 18, 1916 (39 Stat. 134; section 4144a, U. S. Comp. Stats. Ann. 1916):

"The provisions of sections twenty-one hundred and forty and twenty-one hundred and forty-one of the Revised Statutes of the United States shall also apply to beer and other intoxicating liquors named in the act of January thirtieth, eighteen hundred and ninety-seven (Twenty-Ninth Statutes at Large, page five hundred and six), and the possession by a person of intoxicating liquors in the country where the introduction is prohibited by treaty or federal statute shall be prima facie evidence of unlawful introduction."

[1] The plaintiff in error contends that the public highway, the place where the search and seizure were made, was not Indian country, and hence no introduction of liquor into Indian country has been proven. The criterion to determine whether this place had ceased to be Indian country is whether the Indian title had or had not been extinguished. Bates v. Clark, 95 U. S. 204, 208, 24 L. Ed. 471; Ex parte Crow Dog, 109 U. S. 556, 561, 3 Sup. Ct. 396, 27 L. Ed. 1030; Dick v. United States, 208 U. S. 340, 352, 28 Sup. Ct. 399, 52 L. Ed. 520; United States v. Celestine, 215 U. S. 278, 285, 30 Sup. Ct. 93, 54 L. Ed. 195; Donnelly v. United States, 228 U. S. 243, 269, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710; United States v. Pelican, 232 U. S. 442, 449, 34 Sup. Ct. 396, 58 L. Ed. 676; Evans v. Victor, 204 Fed. 361, 365, 122 C. C. A. 531. The Allotment Act relating to these Osage Indian lands, approved June 28, 1906 (34 Stat. 539), provided for the distribution of the lands to the members of the tribe, but contained this provision relating to highways:

"Sec. 10. That public highways or roads, two rods in width, being one rod on each side of all section lines, in the Osage Indian reservation, may be established without any compensation therefor."

[2] There can be no question that the Indian title is extinguished when the United States has made a grant of the title and of the right of possession, either expressly or as the necessary result of the statute, so that the jurisdiction of the state is full and complete. Missouri, Kansas & Texas Ry. Co. v. Roberts, 152 U. S. 114, 117,

14 Sup. Ct. 496, 38 L. Ed. 377; Dick v. United States, 208 U. S. 340, 352, 28 Sup. Ct. 399, 52 L. Ed. 520; Evans v. Victor, 204 Fed. 361, 366, 122 C. C. A. 531; United States v. Four Bottles Sour-Mash Whisky (D. C.) 90 Fed. 720, 723.

[3] In case of the grant of a right of way through the Indian country, when title to the fee has been granted, and the Indians' right of possession has been surrendered or otherwise extinguished, the Indian title ceases. Buttz v. Northern Pacific Railroad, 119 U. S. 55, 69, 70, 7 Sup. Ct. 100, 30 L. Ed. 330; Missouri, Kansas & Texas Ry. Co. v. Roberts, 152 U. S. 114, 117, 14 Sup. Ct. 496, 38 L. Ed. 377; Clairmont v. United States, 225 U. S. 551, 556, 32 Sup. Ct. 787, 56 L. Ed. 1201; United States v. Lindahl (D. C.) 221 Fed. 143, 144.

[4] The grant of a right of way over the lands does not necessarily imply that the Indian title to the soil is terminated. In the case of United States v. Soldana, 246 U. S. 530, 38 Sup. Ct. 357, 62 L. Ed. 870, the validity of an indictment charging an introduction of liquor into the Indian country dependent upon the construction given to a grant of the right of way to the railway company through the Crow Indian reservation, or upon the answer to the question, as stated by the court:

"Did the statutes except from the reservation the land on which the railroad was built and extinguish the Indian title, or did they merely give to the company a right of way or other limited interest in the land on which to construct and operate a railroad?"

The statutes granted a right of way to construct a railroad, provided for surveys, construction, and operation with due regard for the rights of the Indians, and declared that the grant was on condition that the grantee would not aid, advise, or assist in any effort looking toward the changing or extinguishing of the existing tenure of the Indians in their land, and would not attempt to secure from the Indian tribes any further grant of land or its occupancy than was therein provided. It was decided that whether those acts granted a mere easement, or a limited fee, or some other limited interest in the land, it was not the purpose of Congress to extinguish the title of the Indians in the land comprised within the right of way. In the statute relating to these Osage allotments, the section following the one relating to public highways confirms the railroad companies' lands taken or condemned in the Osage reservation for right of way and railroad purposes, and such lands were reserved from selection and allotment. The reservation relating to public highways merely provided that they might be established of a prescribed width and without compensation. It thus committed to the laws of the territory of Oklahoma as then existing, or to the laws of the future state succeeding it, the mode of establishing such highways. If the laws of the territory or state had provided for a mode of establishing highways by which the title to the highway was acquired by the state or some legal subdivision thereof, the effect of this grant would have been to transfer the title from the United States when the highway was legally established; but if the local laws provided only for the acquisition of an easement, and left the legal title to the soil in the

abutting owners, then the effect of the grant was merely to transfer an easement. There was in force in the territory, at the time of the enactment of the Osage Allotment Act, a territorial statute (section 6072, Wilson's Rev. & Ann. Stats. 1903), as follows:

"All section lines in this territory shall be and are hereby declared to be public highways. The said roads or highways shall be 66 feet wide, and shall be taken equally from each side of said section line. That all roads or highways hereafter laid out or opened upon half section lines shall be the width petitioned for by the petitioners of said road which shall not be more than 66 feet nor less than 32 feet: Provided, that forest or fruit trees may be planted and grown on all roads more than 50 feet wide, to within 25 feet of the center of such highway."

This section continued in force until the admission of Oklahoma to statehood. In section 2 of article 16 of the Constitution of that state it was provided:

"The state of Oklahoma hereby accepts all reservations and lands for public highways made under any grant, agreement, treaty, or act of Congress: Provided, this section shall not be construed to prejudice the vested rights of any tribe, allottee, or other person to any such land."

The effect of these provisions has been declared by the Supreme Court of Oklahoma in Mills v. Glasscock, 26 Okl. 123, 127, 110 Pac. 377, 378, as follows:

"On June 28, 1906, when the Osage Allotting Act, including section 10, supra, was passed, section 6072 of Wilson's Rev. & Ann. St. 1903, was in force in the territory of Oklahoma, within the boundaries of which the Osage Indian reservation was located, and as soon as said section 10 was applied to the Osage Indian lands, said section 6072 had the effect of accepting the dedication or grant, for the purposes of public highways. By the terms of the Enabling Act (section 21) and the schedule to the Constitution (section 2), the laws in force in the territory of Oklahoma at the time of the admission of the state into the Union remained in force throughout the state, except as modified or changed by said act or by the Constitution of the state. Section 2, art. 16, of the Constitution, a specific acceptance of all reservations and lands for public highways made under any grant, agreement, treaty, or act of Congress, as supplemented by the provision of section 6072 of Wilson's Rev. & Ann. St. 1903, extended in force in this state, providing that all section lines within this state 'shall be and are hereby declared to be public highways,' had the effect of establishing public highways or roads on all section lines in the Osage Nation, one rod in width on each side of said section lines. Section 30, art. 1, c. 32, Sess. Laws 1909, seems also to be a legislative construction to this effect."

By the common law the establishment of a public highway did not divest the owner of the abutting land of his title to the soil over which the highway was laid, but it remained his property subject only to the easement. Barclay v. Howell, 6 Pet. 498, 513, 8 L. Ed. 477; U. S. v. Harris, 1 Sumn. 21, 37, Fed. Cas. No. 15,315; Martin v. Waddell, 16 Pet. 367, 421, 10 L. Ed. 997; Olcott v. Supervisors, 16 Wall. 678, 697, 21 L. Ed. 382; Lyman v. Arnold, 5 Mason, 195, 198, Fed. Cas. No. 8,626. The common-law rule prevails in Oklahoma, Mean v. Callison, 28 Okl. 737, 738, 116 Pac. 195; Kansas Natural Gas Co. v. Haskell (C. C.) 172 Fed. 545, 567. The Indians owning these allotments, therefore, were the owners of the lands on which the road in question ran, subject only to the public easement,

and as their title to the land beneath the road had not been extinguished, it was still Indian country within the rule laid down in United States v. Soldana, 246 U. S. 530, 38 Sup. Ct. 357, 62 L. Ed. 870.

[5] A majority of the court are of the opinion that, if a prima facie case arose under the provisions of the Act of Congress of May 19, 1916, heretofore cited, because of the presence of the champagne in the automobile at the place where it was stopped and searched, such prima facie case was overcome by the stipulated facts that the automobile was being used on a pleasure trip, starting at the town of Hominy, and was at the time it was stopped returning to that town along the public highway, and therefore it had not been used, and was not being used, to convey and introduce liquor into Indian country.

The judgment will be reversed.