## UNITED STATES v. LINDAHL.

### (District Court, D. Montana. March 4, 1915.)

### No. 2611.

1. INDIANS ⬤⇒35—INTOXICATING LIQUORS—"INDIAN COUNTRY"—RAILROAD RIGHT OF WAY.

A railroad right of way through an Indian reservation, granted by Act Feb. 15, 1887, c. 130, 24 Stat. 402, which provided for an absolute grant upon payment of the compensation, and that the operation of the railroad should be conducted with due care for the rights of the Indians and under such rules and regulations as the Secretary of the Interior may provide, is not "Indian country," within which to introduce intoxicating liquors, is a crime against the United States, since the right of the Indians thereto was completely extinguished when the compensation was paid.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62; Dec. Dig. ⬤⇒35.

For other definitions, see Words and Phrases, First and Second Series, Indian Country.]

2. INDIANS ⬤⇒10—LANDS—TITLE OF INDIANS.

The Indians' right and title to a reservation is that of occupancy and use only, and Congress has full power to dispose thereof, with or without the consent of the Indians.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 25, 29, 46; Dec. Dig. ⬤⇒10.]

Peter Lindahl was indicted for introducing intoxicating liquors into the Indian country, and he demurs to the indictment. Demurrer sustained.

B. K. Wheeler, U. S. Atty., of Butte, Mont., and H. G. Murphy, Asst. U. S. Atty., of Helena, Mont.

S. C. Ford, of Helena, Mont., for defendant.

BOURQUIN, District Judge. Defendant is charged with having introduced intoxicating liquor into the Indian country, to wit, upon a railroad right of way where it traverses the Ft. Peck Indian reservation. He demurs to the jurisdiction of the court, claiming that said place is not Indian country.

[1] Upon argument and for the purpose of a test case, it was agreed, or it appears in the indictment, or is presumed or judicially noticed, that the said right of way is that granted by congressional act February 15, 1887 (24 Stat. 402), that it was and is devoted to railroad purposes, that the compensation by said act provided has been paid, and that the present occupant is the vendee of the beneficiary in said grant. Section 1 of said act provides "that the right of way is hereby granted," and section 4 provides that the Secretary of the Interior shall "fix the amount of compensation to be paid the Indians for such right of way," that "no right of way of any kind" shall vest in the beneficiary until such compensation is paid, and that the operation of the railroad "shall be conducted with due regard for the rights of the Indians, and in accordance with such rules and regulations as the Secretary of the Interior may make to carry out this provision."

[2] Prior to said grant the land covered by the right of way was part of said reservation. The Indians' right and title was that of occupancy and use only, the fee being in the United States. Over such lands Congress has plenary power, and to dispose of them at discretion, with or without the Indians' consent and compensation to them made, and to extinguish the Indian right and title.

Giving to the language of said act a reasonable and the usual construction of like grants, it must be taken to have granted to the beneficiary the usual right of way—a limited fee—contingent on compensation to the Indians, to have created a new estate inconsistent with continuation of the Indians' estate, and so to have extinguished the Indian right and title. The grant was outright or absolute, and not made contingent upon consent by the Indians or the Secretary of the Interior. The Indians had no voice in the matter. Congress spoke for them. The Secretary, in so far as the taking effect of the grant was concerned, was empowered only to fix the amount of compensation. His authority to provide rules and regulations, perhaps of the nature of conditions subsequent, for the operation of this railroad, extended no further than the plain import of those terms. It would not seem that Congress, even if it could, authorized the Secretary at his option to fix or perpetuate upon the right of way a status of "Indian country" in the matter of introduction of intoxicating liquor thereon, and so at his option to extend or perpetuate the application of the relevant criminal laws thereto in respect to people in general, or at all. However, it does not appear that the Secretary has made any rules in respect thereto and of which the court might take judicial notice.

This case is indistinguishable in principle from the Clairmont Case, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201. True, in the cited case the Indian title was extinguished, not by the congressional grant involved, but by the Indians' express agreement subsequently made; but that is because the grant so provided. Congress had power to extinguish the Indian title by grant, but did not; in legal effect providing it should be extinguished only with the Indians' consent. The grant involved in the instant case is otherwise. Not *how* the Indian title is extinguished, but that it *is* extinguished, is the principle of the Clairmont Case. Evidently to secure the Indians' consent might present difficulties. The grant here involved avoided the latter by nonrequirement of the former. When the Indian title to reservation lands is unqualifiedly extinguished, such lands are no longer "Indian country," within which to introduce intoxicating liquor is a crime against the United States. That is the Clairmont Case. That is this case. Since said right of way is not "Indian country," this court has no jurisdiction of the alleged offense. No offense was committed.

The demurrer is sustained, and the indictment dismissed.